(20 P.3d 731)

No. 84,658

STATE OF KANSAS, *Appellee*, v. JONATHAN B. PHELPS, *Appellant*.

Opinion filed March 9, 2001.

*Stephen M. Joseph*, of Redmond & Nazar, L.L.P., of Wichita, and *Chris R. Davis*, of Phelps-Chartered, of Topeka, for appellant.

*Selzler Lippert* and *Joel W. Meinecke*, assistant district attorneys, *Joan M. Hamilton*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before BEIER, P.J., PIERRON, J., and TOM MALONE, District Judge, assigned.

BEIER, J.: Defendant-appellant Jonathan B. Phelps seeks review of his conviction after retrial on one count of disorderly conduct. He poses four questions: (1) Did the district court give an erro-

neous instruction on disorderly conduct? (2) Did the district court err by denying defendant's post-trial motion to arrest judgment? (3) Did the district court err by denying defendant's post-trial motion for reconsideration based on selective or bad faith prosecution? and (4) Did the district court err by ordering defendant to pay travel expenses and in its calculation of those expenses?

The pertinent facts are these: Teresa Roles was a passenger in a car driven by her sister. Roles observed Phelps and his family crossing a Topeka street, carrying signs. Roles rolled down her window and told defendant that "hate was not a family value." Defendant then approached the car and screamed, "Dyke," in what Roles described as the loudest voice she had ever heard. Roles got out of the car while defendant walked away from her across a driveway. She said, "Excuse me?" and defendant screamed at her, calling her a whore, a lesbian, a sodomite, and a dyke repeatedly for a couple of minutes until Roles got back into the car.

Phelps agreed that he yelled at Roles in a "rapid fire" manner and may have used some of the words she described. He further testified that the driver got out of the car and walked to Roles, and the driver appeared to be addressing Phelps' wife. Although he probably told the driver that she was blocking traffic, he testified that his yelling and gesturing were directed at Roles.

Defendant was charged with disorderly conduct, and the complaint read in pertinent part:

"COUNT 01
"DISORDERLY CONDUCT
"K.S.A. 21-4101; Class C Person Misdemeanor
"On or about the 3rd day of August, 1995, in the State of Kansas and County of Shawnee, **Jonathan B. Phelps**, did, then and there, unlawfully, and with knowledge or probable cause to believe that such acts will alarm, anger or disturb others, did use offensive, obscene or abusive language tending reasonably to arouse alarm, anger or resentment in others, to-wit: Teresa Roles, and others, such case made and provided and against the peace and dignity of the State of Kansas."

He filed a pretrial motion to dismiss, motion for discharge, motion to disqualify prosecutor, and/or for other appropriate relief, which was heard and denied by the district court.

After a first jury trial, Phelps was convicted of one count of disorderly conduct. As a condition of his probation, the district court ordered him to pay $1,098.22 for Roles' travel costs from the state of Washington to Topeka, Kansas. In arriving at that amount under K.S.A. 22-4203, the court multiplied 29 per mile times a total of 3,718 miles, the roundtrip distance point-to-point, which totaled $1,078.22. Roles' actually had spent only $460.00 on airfare and $56.00 on a shuttle to and from the airport. The award thus exceeded her actual travel expenses by $582.22; the court indicated that difference included $20 for 2 days of witness attendance.

On appeal after this first trial, Phelps raised several issues, including the method of calculating Role's travel expenses. This court reversed on only one issue, however, ruling that retrial was necessary because the district court did not tell the jury the existence of "fighting words" must be determined by an objective test. *State v. Phelps*, Case No. 77,292, unpublished opinion filed April 10, 1998.

At defendant's second trial, the district court gave the following jury instruction regarding disorderly conduct over defendant's objection:

"The defendant is charged with the crime of disorderly conduct. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"One, that the defendant used offensive, obscene or abusive language of such a nature that it would tend to provoke a reasonable person to an immediate assault or other breach of the peace.

"Two, that the defendant acted with knowledge of reasonable cause to believe that the defendant's words would tend to cause such an immediate assault or other breach of peace.

. . . .

"An assault is an intentional placing of another person in reasonable apprehension of immediate bodily harm."

Defendant was convicted again. He filed a post-trial motion to arrest judgment as well as a motion for reconsideration of the motion to dismiss he had filed to challenge what he saw as selective prosecution before his first trial. The district court denied the motions, finding:

"K.S.A. 22-3208(3) requires that all defenses and objections based on defects in the institution of the prosecution of the complaint/information, except jurisdiction, must be raised by motion before trial and failure to raise these issues constitutes a waiver. [Citation omitted.] It appears from liberal interpretation of [the] motion and brief that this 'newly discovered evidence' was known to [Phelps] after the first trial and before the second trial, which would require him to raise this issue before the second trial or his failure would constitute a statutory waiver of these issues. [Phelps] failed to raise these issues before the second trial and his failure constitutes a statutory waiver of all existing defenses and objections raised by his renewed motion."

Defendant was sentenced to 12 months' probation, and the district court ordered defendant to pay $2,496.60 in restitution as a condition of probation. The record is not clear on how this new amount was calculated.

### Disorderly Conduct Instruction

Defendant argues for the first time on appeal that the district court erred in its disorderly conduct jury instruction by failing to include a requirement that Phelps' words be "directed to" Roles. This was not the basis of the defense objection at trial.

"[N]o party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he or she objects and the grounds of his or her objection, unless the instruction or the failure to give the instruction is clearly erroneous. K.S.A. 22-3414. Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred." *State v. Henry*, 263 Kan. 118, 131, 947 P.2d 1020 (1997).

Phelps correctly states in the abstract that conviction on a charge of disorderly conduct requires the defendant to have uttered "fighting words" and a necessary element of "fighting words" is that the words be directed to a specific person or group. *Texas v. Johnson*, 491 U.S. 397, 409, 105 L. Ed. 2d 342, 109 S. Ct. 2533 (1989) (direct personal insult needed).

In this case, however, the district court's failure to include the requirement that Phelps' words be directed at Roles was not clearly erroneous. Even defendant admitted that he directed his offensive "rapid fire" comments at Roles. And in closing argument, defense counsel talked to the jury solely about the statements made to

Rules and whether those words would provoke Rules to fight with defendant. No real possibility exists that the jury would have returned a different verdict if the "directed to" language had been included in the instruction.

Defendant also argues that the disorderly conduct instruction was insufficient because it included the term "assault" without a proper definition. This specific objection was made at trial; thus Phelps need not meet the "clearly erroneous" standard of review. Nevertheless,

"we are required to consider all the instructions together, read as a whole, and not to isolate any one instruction. If the instructions properly and fairly state the law as applied to the facts of the case and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous. [Citation omitted.]" *State v. Mims*, 264 Kan. 506, 514, 956 P.2d 1337 (1998).

Defendant asserts that "assault" should have been defined to mean "[w]ords that are inherently likely to provoke a reasonable person to retaliate immediately against the speaker with personal physical violence." He cites no authority for this language other than his own belief that the court's version was convoluted and the observation that the definition of criminal assault has changed over the years.

Kansas' disorderly conduct statute, K.S.A. 21-4101(c), which took its current form after the only legal authority cited by Phelps was written, provides:

"Disorderly conduct is, with knowledge or probable cause to believe that such acts will alarm, anger or disturb others or provoke an *assault or other breach of the peace*:

. . . .

"(c) Using offensive, obscene, or abusive language or engaging in noisy conduct tending reasonably to arouse alarm, anger or resentment in others." (Emphasis added.)

The companion PIK instruction also uses the term "assault." PIK Crim. 3d 63.01. Our Supreme Court has upheld the constitutionality of K.S.A. 21-4101(c) when construed to regulate only "fighting words" such as those alleged here. *State v. Huffman*, 228 Kan. 186,

192, 612 P.2d 630 (1980). Phelps has supplied us with nothing that persuades us otherwise.

Phelps' final attack on the disorderly conduct instruction takes issue with the district court's failure to define "breach of the peace." This issue was preserved for our review.

In the landmark case discussing "fighting words," *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 86 L. Ed. 1031, 62 S. Ct. 766 (1942), the United States Supreme Court defined "fighting words" as "those which by their very utterance inflict injury or tend to incite an immediate *breach of the peace*." (Emphasis added.) The Kansas courts have repeatedly used the *Chaplinsky* definition in cases involving "fighting words." See *Huffman*, 228 Kan. at 190; *City of Wichita v. Edwards*, 23 Kan. App. 2d 962, 965, 939 P.2d 942 (1997); *State v. Beck*, 9 Kan. App. 2d 459, 461, 682 P.2d 137, *rev. denied* 235 Kan. 1042 (1984).

We do not agree with Phelps that the phrase "breach of the peace" was unintelligible to the jury without further explanation. A district judge need not define words or phrases that are used in a manner commonly understood. See *State v. Roberts-Reid*, 238 Kan. 788, 789-90, 714 P.2d 971 (1986) (no definition of "material" needed); *State v. Royal*, 234 Kan. 218, 223, 670 P.2d 1337 (1983) (definition of "bodily harm" not required); *State v. Brown*, 6 Kan. App. 2d 556, 560-61, 630 P.2d 731 (1981) ("theft" need not be defined; generally sufficient to give statutory definition of crime; not necessary to define every word or phrase).

"It is only when the instructions as a whole would mislead the jury, or cause them to speculate, that additional terms should be defined. A term which is widely used and which is readily comprehensible need not have a defining instruction. A word or phrase which persons of common intelligence and understanding can comprehend is not one which requires definition." 6 Kan. App. 2d at 561.

In our view, particularly given the widespread use of the phrase "breach of the peace" from at least the time of *Chaplinsky* forward, no further definition was required in this case to ensure the reach of the disorderly conduct statute was limited to "fighting words."

### Motion to Arrest Judgment

As Phelps properly renewed his motion to arrest judgment after the second trial, our standard of review is as follows:

" 'In Kansas, all crimes are statutory and the elements necessary to constitute a crime must be gathered wholly from the statute. An information which omits one or more of the essential elements of the crimes it attempts to charge is jurisdictionally and fatally defective, and a conviction based on such an information must be reversed.' " *State v. Crockett*, 26 Kan. App. 2d 202, 205, 987 P.2d 1101 (1999) (quoting *State v. Sanford*, 250 Kan. 592, 601, 830 P.2d 14 [1992]).

"The sufficiency of the charging document is measured by whether it contains the elements of the offense intended to be charged, sufficiently apprises the defendant of what he or she must be prepared to meet, and is specific enough to make a subsequent plea of double jeopardy possible. The charging document is sufficient if it substantially follows the language of the statute or charges the offense in equivalent words or words of the same import." *State v. Smith*, 268 Kan. 222, 226-27, 993 P.2d 1213 (1999).

The district court denied defendant's post-trial motion to arrest judgment, holding:

"Defendant claims the complaint was defective because it failed to include a necessary element of the offense. *State v. Huffman*, 228 Kan. [186] (1980), clearly provides that judicial officers have a duty to uphold the legislative work-product if there is any reasonable way to construe the statute as constitutionally valid. [Citations omitted.] Once authoritatively construed, the statute will thereafter be immune from attack on grounds of overbreadth. [Citations omitted.] The case law has been codified, K.S.A. 22-3201 controls, a complaint in the language of the statute is sufficient and this complaint is sufficient."

Defendant argues that, because the *Huffman* decision construed subsection (c) of the disorderly conduct statute to apply only to "fighting words," certain words must be stricken from any complaint drawn in the language of the statute.

While Phelps is correct that *Huffman* narrowly construed K.S.A. 21-4101(c) to apply only to "fighting words," it did not strike the words "alarm, anger or disturb others" or "using offensive, obscene, or abusive language" from the language of the statute when used to draw a complaint as defendant suggests. The court specifically considered the first of those collections of words included when it stated: "Persons of common intelligence need not guess at the meaning of the words 'alarm, anger or disturb,' when used in conjunction with fighting words." *Huffman* 228 Kan. at 193. Phelps was not unfairly surprised by the details of the State's allegations against him; nor was his ability to prepare a defense hampered in

any way. The district court did not err in finding the complaint sufficient.

## Motion for Reconsideration

A defendant alleging discriminatory prosecution must show: " '1) Others who are similarly situated are not generally prosecuted for conduct similar to that for which defendant is being prosecuted, and 2) the defendant has been intentionally and purposefully singled out for prosecution on the basis of an arbitrary or invidious criterion.' " *State v. Marino*, 23 Kan. App. 2d 106, 108, 929 P.2d 173 (1996) (quoting *State ex rel. Murray v. Palmgren*, 231 Kan. 524, Syl. ¶ 1, 646 P.2d 1091 [1982]).

On this issue, Phelps makes only allegations that evidence and witnesses damaging to the district attorney who were previously unavailable are now available and that state law on the subject of selective prosecution had become clearer. Defendant's brief does not expand on his bases, and he cites no authority to support his arguments. An issue which is not briefed is deemed abandoned. *State v. Valdez*, 266 Kan. 774, 784, 977 P.2d 242 (1999).

We also observe that the record contains no evidence that is truly "new." Thus, even if we were to reach the merits on this issue, defendant could not meet his burden of proving that the "evidence" he relied upon was "new" and could not have been produced at his second trial with the exercise of reasonable diligence.

## Travel Expenses

Defendant argues that the district court erred by ordering him to pay Roles' travel expenses for both trials as a condition of probation and that it miscalculated the expenses under K.S.A. 22-4203 and K.S.A. 75-3203(a).

"A sentencing court has substantial discretion in determining the conditions of probation. The sentencing court also has substantial discretion when ordering the amount of restitution. Judicial discretion is abused when no reasonable person would take the view adopted by the trial court." *State v. Hymer*, 27 Kan. App. 2d 1054, 1056-57, 11 P.3d 94 (2000.)

Phelps has failed to ensure that the appellate record contains adequate information to tell us exactly what the final amount of $2,496.60 includes. Assuming that it includes expenses from the first trial, we agree that the district court had erred in its initial method of calculation.

" 'It is well settled in [Kansas] that upon conviction in a criminal action the defendant is liable for the costs made in both the prosecution and defense of the case.' *State v. Shannon*, 194 Kan. 258, 263, 398 P.2d 344, *cert. denied* 382 U.S. 881 (1965)." *State v. Rother*, 23 Kan. App. 2d 443, 931 P.2d 1268, *rev. denied* 261 Kan. 1088 (1997); see K.S.A. 22-3801.

K.S.A. 22-4203 provides that, if an out-of-state individual is summoned to appear and testify in a prosecution, the witness shall receive the mileage rate under K.S.A. 75-3203a "for each mile by the ordinary traveled route to and from the court where the prosecution is pending" and witness fees under K.S.A. 28-125 for each day he or she is required to travel and appear as a witness. K.S.A. 28-125 provides that a witness shall receive $10 per day for attending any proceeding before a court and mileage at the rate prescribed by law for each mile necessarily and actually traveled in going to and returning from the place of attendance. K.S.A. 75-3203a states the mileage rate for witnesses shall be the applicable amount that is fixed by the rules and regulations of the Secretary of Administration.

K.A.R. 1-18-1a (1996 Supp.), which implements K.S.A. 75-3203a, provides in relevant part that an individual is entitled to mileage reimbursement for the use of a privately owned automobile or the use of a privately owned airplane. The regulation, however, further provides that "[w]hen a mode of transportation is available and is less costly than transportation by privately owned conveyance, mileage payments for use of a privately owned conveyance shall be limited to the cost of that other mode of transportation." K.A.R. 1-18-1a(d)(1) (1996 Supp.).

The clear policy behind allowing witness fees and mileage is to reimburse witnesses for their time and travel while in service to the court system. Here Roles traveled round trip by air from Washington to Topeka to testify in at least one trial. These modes of

travel were less costly than the amount of mileage reimbursement she would have otherwise received. Upholding the command that Phelps pay the amount of the difference would, in essence, allow the State to impose an unauthorized additional monetary penalty on Phelps.

Accordingly, we reverse and remand to the district court for a determination of Roles' correct travel expenses in light of K.A.R. 1-18-1a (1996 Supp.) for the first trial and, to the extent necessary, K.A.R. 1-18-1a (1999 Supp.) for the second trial.

We do not consider or rule upon Phelps' additional argument that the reversal after his first trial cuts off the district court's discretion to demand payment of expenses from that proceeding. Phelps failed to address that argument to the district court in the first instance.

Affirmed in part, reversed in part, and remanded with directions.