(194 P.3d 599)
No. 98,572

STATE OF KANSAS, *Appellee,* v. DORIAN RICHARDSON, *Appellant.*

Opinion filed October 24, 2008.

Rick Kittel, of Kansas Appellate Defender Office, for appellant.

Cathy A. Eaton, assistant district attorney, Jerome A. Gorman, district attorney, and Paul J. Morrison, attorney general, for appellee.

Before MALONE, P.J., ELLIOTT and MARQUARDT, JJ.

MALONE, J.: Dorian Richardson appeals his convictions of fleeing or attempting to elude a police officer, reckless driving, and driving while suspended. Richardson claims: (1) the district court erroneously instructed the jury on fleeing or attempting to elude a police officer; (2) his convictions of reckless driving and driving while suspended were multiplicitous with his conviction of fleeing or attempting to elude a police officer; (3) his conviction of fleeing or attempting to elude a police officer was based on acts not alleged in the charging document; (4) the district court erred in denying his request for new counsel; (5) the district court erred by imposing the aggravated sentence in the gridbox; and (6) the district court erred in assessing the Board of Indigents' Defense Services (BIDS) attorney fees.

On July 25, 2005, at 1 a.m., Sergeant Matt Cross of the Kansas City Police Department was in uniform and driving a marked police car when he attempted to stop a vehicle registered to Richardson for failing to use a turn signal. Instead of stopping, however,

Richardson sped off. Cross activated his in-car DVD recording system, which recorded the chase that ensued. Cross pursued Richardson as he turned off his headlights and drove at speeds of up to 70 m.p.h. through a residential neighborhood. During the chase, Richardson failed to stop at five stop signs or traffic lights, failed to use a turn signal five times, and twice drove left of center. Richardson only stopped after running over two sets of stop sticks set out by Officer Jeff Gardner. As Richardson was approaching the second set of stop sticks, Gardner observed Richardson's face, which was illuminated from the streetlights and Cross' spotlight. Gardner later identified Richardson as the driver.

After Richardson finally stopped, he jumped out of the vehicle and fled on foot. Cross continued to pursue Richardson on foot. Although Cross could not see Richardson's face during the pursuit, Cross observed that the driver was a black male about 6 feet tall and weighing about 180 pounds, wearing a white shirt and blue jeans.

Officer Tiffany Burgtorf arrived at the scene to assist Cross. Burgtorf was approximately 1½ blocks behind the pursuit when Richardson bailed out of his vehicle. Burgtorf attempted to cut off Richardson's path with her vehicle. As she was driving, Richardson ran directly in front of her car and fell to the ground. Burgtorf yelled at him to stay down, but Richardson jumped up, looked directly at Burgtorf, and ran away. Burgtorf chased Richardson on foot and observed him remove his white t-shirt while he was running. Burgtorf ultimately lost sight of Richardson when he neared a house surrounded by bushes.

Cross also lost sight of Richardson during the foot chase. Cross and the other officers set up a perimeter where Cross had last seen Richardson. Shortly thereafter, Burgtorf observed movement in the bushes surrounding a house. Upon investigation the officers found Richardson shirtless and hiding in the bushes. Burgtorf later identified Richardson as the man she had chased.

The State charged Richardson with one count of fleeing or attempting to elude a police officer in violation of K.S.A. 8-1568(b)(1)(E), based on his commission of five or more moving violations during the police pursuit. The information identified

Richardson's moving violations as failing to stop for stop signs and traffic lights. The State also charged Richardson with one count of reckless driving and one count of driving while suspended.

Richardson's first trial resulted in a mistrial after the jury was unable to reach a verdict. Richardson was retried. Although he did not testify, Richardson's defense was mistaken identity and that he was not the driver of the vehicle pursued by the police. After hearing the evidence, the jury found Richardson guilty as charged. At sentencing, the district court imposed the aggravated presumptive gridbox sentence of 15 months' imprisonment for the conviction of fleeing or attempting to elude a police officer. The district court also ordered Richardson to reimburse BIDS $100 in attorney fees. Richardson timely appeals.

### Jury instructions

On appeal, Richardson claims the district court erred in failing to instruct the jury on the specific moving violations that formed the basis for his conviction of fleeing or attempting to elude a police officer. He also claims the district court erred by failing to instruct the jury that reckless driving and driving while suspended could not be used as two of the five moving violations required to prove the offense of fleeing or attempting to elude a police officer. Finally, Richardson claims the district court erred by failing to instruct the jury that each of the moving violations constituted a lesser included offense of fleeing or attempting to elude a police officer. At trial, Richardson did not object to any of the district court's instructions or request any additional instructions he now claims should have been given to the jury.

"No party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction, unless the party objects thereto before the jury retires to consider its verdict." K.S.A. 22-3414(3). An appellate court reviewing a district court's failure to give a particular instruction applies a clearly erroneous standard where a party neither suggested an instruction nor objected to its omission. K.S.A. 22-3414(3); *State v. Cooperwood*, 282 Kan. 572, 581, 147 P.3d 125 (2006). " 'Instructions are clearly erroneous only if the reviewing court is firmly convinced

that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred. [Citation omitted.]' " *State v. Trotter*, 280 Kan. 800, 805, 127 P.3d 972 (2006).

Richardson argues that the district court erred in failing to instruct the jury on the specific moving violations that formed the basis for his conviction of fleeing or attempting to elude a police officer. Fleeing and attempting to elude a police officer consists of a "driver of a motor vehicle who willfully fails or refuses to bring such driver's vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle or police bicycle, when given visual or audible signal to bring the vehicle to a stop." K.S.A. 8-1568(a). A violation of K.S.A. 8-1568(a) is a misdemeanor. However, a charge of fleeing or attempting to elude a police officer can be elevated to a felony in one of several ways, including if the defendant "commits five or more moving violations" during a police pursuit. K.S.A. 8-1568(b) and (c)(4).

Here, the district court instructed the jury on the crime of fleeing or attempting to elude a police officer as follows:

"To establish [the charge of fleeing or attempting to elude a police officer], each of the following claims must be proved:

"1. That the defendant was driving a motor vehicle; and

"2. That the defendant was given a visual or audible signal by a police officer to bring the motor vehicle to a stop; and

"3. That the defendant intentionally failed or refused to bring the motor vehicle to a stop, or otherwise fled or attempted to elude a pursuing police vehicle; and

"4. That the police officer giving such a signal was in uniform, prominently displaying such officer's badge of office; and

"5. That the police officer's vehicle was appropriately marked showing it to be an official police vehicle;

"6. *That the defendant committed five or more moving violations*;

"7. That this act occurred on or about the 25th day of July, 2005, in Wyandotte County, Kansas." (Emphasis added.)

This instruction is identical to PIK Crim. 3d 70.09. The district court did not attempt to identify or define in the instruction what constituted the five or more moving violations that Richardson allegedly committed. Richardson claims this prevented the jury from rendering a lawful verdict.

Richardson relies on *State v. Linn*, 251 Kan. 797, 840 P.2d 1133 (1992), *superseded by statute on other grounds by State v. Hedges*, 269 Kan. 895, 901, 8 P.3d 1259 (2000). In *Linn*, the defendant was charged with felony murder, aggravated battery, and aggravated burglary. On the aggravated burglary charge, there was evidence at trial that the defendant entered the residence with the intent to commit robbery, aggravated battery, or theft. Over the defendant's objection, the district court instructed the jury that in order to find the defendant guilty of aggravated burglary, it must find that the defendant entered or remained in the residence " 'with the intent to commit a felony or theft therein.' " 251 Kan. at 800. However, the district court did not set forth the elements of any of the underlying felonies in the jury instructions. The jury found the defendant guilty as charged.

On appeal, the Kansas Supreme Court reversed. The court stated that the district court had a duty to enumerate the statutory elements of aggravated burglary. One of the elements of aggravated burglary is that the defendant entered a residence with the intent to commit a felony or theft therein. The court held that an instruction on aggravated burglary is defective unless it specifies and sets forth the statutory elements of the offense intended by the defendant in making the unauthorized entry. 251 Kan. at 802.

The State attempts to distinguish *Linn* by pointing out there is no underlying felony for the crime of fleeing or attempting to elude a police officer. The State argues that the finding of five or more moving violations merely enhances the crime from a misdemeanor to a felony, and the finding is not a necessary element of the offense. This argument misses the point. Here, the jury was instructed that to establish the crime of fleeing or attempting to elude a police officer, the jury must find beyond a reasonable doubt that Richardson committed five or more moving violations. From the jury's perspective, this was certainly an element of the offense. Even if the finding that Richardson committed five or more moving violations was merely a sentencing enhancement rather than an element of the offense, it would constitute a sentencing enhancement other than a prior conviction. Under *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), such a

fact must be proven to a jury beyond a reasonable doubt to avoid violating Richardson's constitutional rights.

There is no question that the traffic infractions Richardson allegedly committed during the police pursuit constitute moving violations. K.A.R. 92-52-9 lists the traffic violations that are considered moving violations. See K.S.A. 2007 Supp. 8-249(b). Among the moving violations enumerated are K.S.A. 8-1514 (driving left of center), K.S.A. 8-1528 (failing to stop at a stop sign), K.S.A. 8-1548 (turning movements and required signals), K.S.A. 2007 Supp. 8-1558 (speeding), and K.S.A. 2007 Supp. 8-1703 (driving without headlights). K.A.R. 92-52-9(a)(1)(J), (K), (P), (Q), and (AA). However, the issue here is whether the district court erred in failing to define the moving violations for the jury.

PIK Crim. 3d 70.09 is silent as to whether the district court should define the moving violations for the jury when the defendant is charged with fleeing or attempting to elude a police officer under K.S.A. 8-1568(b)(1)(E). Nor are there any published decisions directly on point. However, there are several unpublished decisions from this court analyzing the issue. Most recently, in *State v. Blazier*, No. 94,677, unpublished opinion filed February 23, 2007, *rev. denied* 284 Kan. 947 (2007), this court found no clear error where the district court failed to define moving violations in the jury instructions on felony fleeing and eluding charges. In *Blazier*, the pursuing officer testified that the defendant committed more than five traffic violations during the chase, including six instances of failing to signal a turn, three instances of disobeying a stop sign, two instances of driving down the middle of the road, and two instances of reckless driving. The jury also watched a videotape of the pursuit. Slip op. at 16-19.

In *State v. Fuller*, No. 92,895, unpublished opinion filed January 6, 2006, the district court's jury instruction on fleeing or attempting to elude a police officer identified five traffic offenses as examples of moving violations, but the instruction did not define the moving violations. On appeal, this court found no clear error where the jury instruction listed all the statutory elements of the offense and the jury had heard testimony from the pursuing officers concerning the defendant's moving violations. Even though the jury instruc-

tions did not define moving violations, this court stated that the district court need not define words or phrases that are commonly understood, and, therefore, the district court did not commit clear error. See slip. op at 4-6 (citing *State v. Phelps*, 28 Kan. App. 2d 690, 695, 20 P.3d 731, *rev. denied* 271 Kan. 1041 [2001]).

However, in another fleeing or eluding a police officer case, *State v. Watkins*, No. 90,245, unpublished opinion filed July 2, 2004, this court found merit in the defendant's argument that the district court erred by not defining the moving violations in the jury instructions. Reasoning that the jury should not have to speculate on what the elements are for a moving violation, this court found that the district court should have instructed the jury on the elements of the five moving violations. Nevertheless, the court ultimately reversed the defendant's fleeing or attempting to elude conviction on other grounds, rendering the jury instruction issue moot. Slip op. at 11.

Like the court in *Watkins*, we agree that when a defendant is charged with felony fleeing or attempting to elude a police officer based on the commission of five or more moving violations, the district court should identify and define in the jury instructions the moving violations relied on by the State and supported by the evidence at trial. Although the definition of some moving violations may be commonly understood by a jury without a specific definition from the court, there are certain moving violations whose definition may be beyond the common knowledge of the average juror.

Given our standard of review, the only question is whether a real possibility exists that the jury would have rendered a different verdict if the district court had defined for the jury the moving violations allegedly committed by Richardson. At trial, Cross recounted the traffic violations he witnessed while chasing Richardson, including driving without headlights at night, driving at speeds of up to 70 m.p.h. through a residential neighborhood with a 30 m.p.h. speed limit, failing to stop at five stop signs or traffic lights, failing to use a turn signal five times, and driving left of center twice. This constitutes a total of 14 moving violations without including the separate charges of reckless driving and driv-

ing while suspended. More importantly, the jury also watched a videotape of the pursuit that fairly and accurately represented what happened during the chase.

Richardson did not dispute any of the alleged moving violations at trial. His defense was that he was not the driver of the vehicle pursued by the police. The moving violations involved in Richardson's case are the type of moving violations that would be commonly understood by a jury without a specific definition from the court. Given the undisputed testimony from Cross regarding the number of moving violations committed by Richardson during the police pursuit and the fact that the jury viewed the pursuit on videotape, we conclude there is no real likelihood that the jury could have returned a different verdict had the district court properly defined the moving violations.

Next, Richardson argues that the district court committed clear error by failing to instruct the jury that if it found Richardson guilty of reckless driving and driving while suspended, those offenses could not be used as two of the five moving violations necessary to find him guilty of felony fleeing or attempting to elude a police officer. To prevail on this argument, Richardson must show that there is a real possibility the jury would have rendered a different verdict if the jury had been so instructed. See *Trotter*, 280 Kan. at 805. Richardson cannot do so. The undisputed evidence shows that Richardson committed at least five moving violations by failing to stop for stop signs or traffic lights. These moving violations alone are enough to support Richardson's conviction of felony fleeing or attempting to elude a police officer. Even if the jury had been instructed not to consider reckless driving or driving while suspended as moving violations, Richardson cannot show that the jury would have returned a different verdict.

Richardson further argues that the district court committed clear error when it failed to instruct the jury on the moving violations as lesser included offenses of the crime of fleeing or attempting to elude a police officer. Pursuant to K.S.A. 21-3107(2), upon prosecution for a crime, the defendant may be convicted of either the crime charged or a lesser included crime, but not both. Determination of whether a crime is a lesser included offense is a question

of law, over which an appellate court has unlimited review. *State v. Alderete*, 285 Kan. 359, 361-62, 172 P.3d 27 (2007).

According to Richardson, the commission of five or more moving violations is included as an element of fleeing or attempting to elude a police officer under K.S.A. 8-1568(b)(1)(E). Richardson argues: "To establish all elements of fleeing or attempting to elude a police officer, the State necessarily had to prove five or more moving violations. Therefore, the five or more moving violations are lesser included crimes of fleeing or attempting to elude a police officer."

Richardson's argument is reminiscent of the second prong of the former *Fike* standard for lesser included offenses. See *State v. Fike*, 243 Kan. 365, 757 P.2d 724 (1988). This standard was based on a previous version of K.S.A. 21-3107(2) that defined an included crime as "a crime necessarily proved if the crime charged were proved." See K.S.A. 21-3107(2)(d) (1995 Furse). However, that subsection has been deleted from the statute. See L. 1998, ch. 185, sec. 1.

Under the current test, a lesser included crime is "a crime where all elements of the lesser crime are identical to some of the elements of the crime charged." K.S.A. 21-3107(2)(b). The court performs a strict statutory elements test to determine if an offense is a lesser included offense of the crime charged. "The current test no longer takes into account the factual nuances of a specific case as they may bear on satisfaction of the statutory elements of both crimes under examination." *Alderete*, 285 Kan. at 362.

The moving violations necessary to satisfy K.S.A. 8-1568(b)(1)(E) may consist of any combination of possible traffic violations given the particular facts of a case. Our Supreme Court has made it clear that all the elements of a proposed lesser included offense must be identical to some of the elements of the crime charged to be a lesser included offense of that crime. Under the strict statutory elements test, without applying the facts, the five individual moving violations in Richardson's case are not lesser included offenses of the crime of fleeing or attempting to elude a police officer. The district court did not err by failing to instruct on the moving violations as lesser included offenses.

*Were the convictions multiplicitous?*

Next, Richardson claims that his convictions of reckless driving and driving while suspended were multiplicitous with his conviction of fleeing or attempting to elude a police officer. Richardson did not raise this issue in district court. However, multiplicity may be raised for the first time on appeal in order to serve the ends of justice or prevent the denial of fundamental rights. *State v. Nguyen*, 285 Kan. 418, 433, 172 P.3d 1165 (2007). Richardson's claim of multiplicitous convictions implicates his fundamental constitutional right not to be placed in double jeopardy for the same offense. See *State v. Gomez*, 36 Kan. App. 2d 664, 668, 143 P.3d 92 (2006). Therefore, we will consider Richardson's multiplicity claim for the first time on appeal.

Multiplicity is the charging of a single offense in several counts of a complaint or information. *State v. Kessler*, 276 Kan. 202, 204, 73 P.3d 761 (2003). The principal danger of multiplicity is that it creates the potential for multiple punishments for a single offense, which is prohibited by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. 276 Kan. at 205. Whether convictions are multiplicitous is a question of law subject to unlimited review. *State v. Stevens*, 278 Kan. 441, Syl. ¶ 1, 101 P.3d 1190 (2004).

In *State v. Schoonover*, 281 Kan. 453, 133 P.3d 48 (2006), the Supreme Court developed a two-part analysis to determine whether convictions are multiplicitous. First, a court must consider whether the convictions are based upon the same conduct. If not, the multiplicity analysis ends. 281 Kan. at 496. Some of the factors to consider are whether the acts occur at or near the same time and location, whether there is a causal relationship between the acts, and whether there is a fresh impulse motivating some of the conduct. 281 Kan. 453, Syl. ¶ 16. Here, Richardson's convictions of reckless driving and driving while suspended were based upon the same incident supporting his conviction of fleeing or attempting to elude a police officer. All three convictions arose out of the high-speed chase when Richardson attempted to elude Cross and the other police officers. Applying the *Schoonover* factors, the convictions were based upon the same conduct.

If based upon the same conduct, the court must then consider whether the convictions are based upon a single statute or multiple statutes. If the convictions are based upon different statutes, such as in the present case, the convictions are multiplicitous only when the statutes upon which the convictions are based contain an identity of elements. The court clarified that the same-elements test is the only test to determine multiplicity arising from convictions of separate statutes. 281 Kan. at 497-98.

Fleeing or attempting to elude a police officer consists of a "driver of a motor vehicle who willfully fails or refuses to bring such driver's vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle or police bicycle, when given visual or audible signal to bring the vehicle to a stop" and who during a police pursuit "commits five or more moving violations." K.S.A. 8-1568(a) and (b)(1)(E). Reckless driving occurs when a person "drives any vehicle in willful or wanton disregard for the safety of persons or property." K.S.A. 8-1566(a). Driving while suspended occurs when "[a]ny person who drives a motor vehicle on any highway of this state at a time when such person's privilege so to do is canceled, suspended or revoked." K.S.A. 2007 Supp. 8-262(a)(1).

Fleeing or attempting to elude a police officer requires proof that the defendant was signaled to stop by an officer, but did not do so. Neither reckless driving nor driving while suspended contains this element. Moreover, reckless driving requires proof that the offender drove with reckless disregard for the safety of persons or property. Even though fleeing or attempting to elude a police officer under 8-1568(b)(1)(E) requires proof that the offender committed five or more moving violations, it does not contain the element that the offender drove with reckless disregard for the safety of persons or property. Driving while suspended requires that the offender's license be suspended. Neither reckless driving nor fleeing or attempting to elude a police officer contains this element. Under the *Schoonover* analysis, Richardson's convictions were not multiplicitous because the statutes upon which the convictions are based do not contain an identity of elements.

*Was Richardson's conviction based on acts not alleged in the charging document?*

Next, Richardson claims the State relied upon moving violations not alleged in the charging document to prove that he committed the crime of fleeing or attempting to elude a police officer. Here, the charging document stated that Richardson committed five or more moving violations, identified as failing to stop for stop signs and traffic lights. At trial, however, the State presented evidence that Richardson committed additional moving violations, including driving without headlights, speeding, failure to use turn signals, and driving left of center. Without citing any legal authority for support, Richardson contends this violated his constitutional due process rights.

Richardson did not raise this issue in district court. Constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Gaudina*, 284 Kan. 354, 372, 160 P.3d 854 (2007). An exception exists if consideration of the theory is necessary to serve the ends of justice or to prevent a denial of fundamental rights. *State v. Hawkins*, 285 Kan. 842, 845, 176 P.3d 174 (2008). Whether an individual's constitutional rights have been violated is a question of law, and an appellate court's review is unlimited. *McComb v. State*, 32 Kan. App. 2d 1037, 1041, 94 P.3d 715 (2004).

Here, the charging document alleged:

"Dorian W. Richardson did unlawfully and willfully fail or refuse, while operating a motor vehicle, to bring the vehicle to a stop, or did otherwise flee or attempt to elude a pursuing police vehicle, having been given visual or audible signals to do so by a uniformed police officer, and in the course of such police pursuit: did commit five or more moving violations, to-wit: did fail to stop for stop signs and traffic lights, in violation of K.S.A. 8-1568 (Eluding a Police Officer, Severity Level 9, Person Felony)."

We begin by noting that, in terms of the sufficiency of the language of the charging document, the State was not required to specify any of the moving violations Richardson allegedly committed. In *State v. Akins*, No. 93,767, unpublished opinion filed April 21, 2006, *rev. denied* 282 Kan. 791 (2006), the defendant was charged with fleeing or attempting to elude a police officer. The

charging document alleged that the defendant committed five or more moving violations but did not specify *any* of the moving violations the defendant allegedly committed. This court rejected the defendant's argument that the charging document was defective. The court found that the charging document was drawn from the language of the statute and was sufficient to inform the defendant of the charge against him. Slip op. at 5-6; see also *State v. Bird,* 238 Kan. 160, 166, 708 P.2d 946 (1985) (although accused has the right to know the nature of the charge against him, the information need not set forth all the specific evidentiary facts relied on to sustain the charge).

Here, the charging document alleged that Richardson committed five *or more* moving violations. The charging document informed Richardson of the charge against him, and the evidence at trial conformed with the charging document. The uncontested evidence showed that Richardson failed to stop at five stop signs or traffic lights. The fact that there was evidence of additional moving violations Richardson committed in the course of the police pursuit did not violate Richardson's constitutional due process rights. Richardson has not explained how his ability to defend himself was prejudiced or how his substantial rights to a fair trial were impaired by the evidence of the additional moving violations. We conclude that Richardson's constitutional argument is without merit.

### Request for new counsel

Richardson claims the district court erred when it denied his request for new counsel before the commencement of his second jury trial. Richardson contends there was a conflict of interest and a complete breakdown in communication between him and his court-appointed attorney.

An appellate court reviews the district court's refusal to appoint new counsel for abuse of discretion. *State v. McGee,* 280 Kan. 890, 894, 126 P.3d 1110 (2006). The district court abuses its discretion when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the district court, then it cannot be said that the district court

abused its discretion. *State v. Reed*, 282 Kan. 272, 280, 144 P.3d 677 (2006).

A defendant must show justifiable dissatisfaction with his or her appointed counsel to justify the appointment of new counsel. Justifiable dissatisfaction occurs when there is a conflict of interest, an irreconcilable conflict, or a complete breakdown in communications between the defendant and his or her appointed attorney. *McGee*, 280 Kan. at 894. When the district court becomes aware of a possible conflict of interest between an attorney and a defendant charged with a felony, the court has a duty to inquire further to insure that the defendant's Sixth Amendment right to counsel is not violated. *State v. Vann*, 280 Kan. 782, Syl. ¶ 1, 127 P.3d 307 (2006).

Richardson's complaint about his court-appointed attorney is somewhat difficult to follow. After the district court ruled on pretrial motions, the district court asked if there were any further matters. The prosecutor and defense counsel indicated that they did not have any other issues to address when Richardson stated that he objected to his appointed counsel, W. Frederick Zimmerman, based on a conflict of interest. Richardson's primary objection hinged on a single telephone conversation that Zimmerman had with Richardson's girlfriend and possible alibi witness, Vicki Kochsmeier. In this conversation, Zimmerman allegedly informed Kochsmeier that Richardson's prior attorney had withdrawn "because of an incident she perceived to be inappropriate." Richardson interpreted this as a breach of the attorney-client privilege and claimed that Zimmerman sabotaged Kochsmeier as a witness.

The district court inquired further into the situation, asking both parties to explain. Richardson indicated that he did not want Zimmerman to have any further contact with Kochsmeier. The district court stated that it would allow Richardson to contact Kochsmeier directly and that the court would consider continuing the trial if Richardson was unable to locate Kochsmeier. The district court held a recess so that Richardson could call Kochsmeier. Richardson was unable to contact Kochsmeier during the recess, but Richardson agreed to proceed to trial as scheduled to avoid another delay. Ultimately, the district court found that the conversation between

Zimmerman and Kochsmeier was not a breach of attorney-client privilege and did not warrant Zimmerman's discharge. In support of its ruling, the district court observed that Zimmerman was Richardson's fourth attorney, Zimmerman was an experienced attorney, the defense was relatively straightforward, and Zimmerman would protect Richardson's interests.

On appeal, Richardson argues Zimmerman violated Kansas Rule of Professional Conduct (KRPC) 1.6, which governs the confidentiality of information. KRPC 1.6 provides that "[a] lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation." (2007 Kan. Ct. R. Annot. 436.)

We disagree that Richardson showed a justifiable dissatisfaction with Zimmerman to justify the appointment of new counsel. Richardson failed to establish a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between Richardson and Zimmerman. *McGee,* 280 Kan. at 894. The district court provided a meaningful opportunity for Richardson to express his allegations to the court, and the court adequately addressed his complaints. Regarding Richardson's reluctance to allow Zimmerman to contact Kochsmeier as a possible alibi witness, the district court held a recess and arranged for Richardson to personally contact Kochsmeier via telephone. When Richardson's attempt to contact her was unsuccessful, Richardson agreed to proceed to trial to avoid another delay. The district court attempted to accommodate Richardson to the extent possible and to facilitate communication between Richardson and Zimmerman, and the district court cited persuasive reasons supporting its decision not to appoint new counsel. We conclude the district court did not abuse its discretion in denying Richardson's request for new counsel.

### Sentencing issues

Richardson raises two sentencing issues. First, Richardson argues his Sixth and Fourteenth Amendment rights were violated when the district court imposed the aggravated presumptive grid-box sentence of 15 months' imprisonment for the conviction of

fleeing or attempting to elude a police officer, without citing factors justifying the aggravated sentence and proving them to a jury beyond a reasonable doubt. Richardson cites *Cunningham v. California*, 549 U.S. 270, 166 L. Ed. 2d 856, 127 S. Ct. 856 (2007), and *Apprendi v. New Jersey*, 530 U.S. 466, 476, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), for support.

Our Supreme Court recently addressed this issue in *State v. Johnson*, 286 Kan. 824, 190 P.3d 207 (2008). In *Johnson*, the court held that a sentence to any term within the range stated in a Kansas sentencing guidelines presumptive gridbox does not violate either *Cunningham* or *Apprendi* and that "K.S.A. 21-4720(e)(1) does not require a sentencing judge to cite to an aggravating or mitigating fact when determining which presumptive sentence to impose." *Johnson*, 286 Kan. at 849. The court also held that in a direct appeal, an appellate court is without jurisdiction to consider a challenge to a presumptive sentence, even if that sentence is to the highest term in a presumptive grid block. *Johnson*, 286 Kan. at 851-52.

Here, Richardson's sentence for fleeing or attempting to elude a police officer is a presumptive sentence, even though the district court imposed the highest term in the presumptive gridbox. Therefore, this court lacks jurisdiction to consider this issue on direct appeal.

Finally, Richardson maintains that the district court ordered him to reimburse BIDS for attorney fees without considering his ability to pay the fees or the financial burden that payment would impose, as mandated by K.S.A. 22-4513 and *State v. Robinson*, 281 Kan. 538, 132 P.3d 934 (2006). The State concedes that the district court did not comply with *Robinson* and agrees that the case should be remanded to the district court to consider the appropriate findings. The record reflects that the district court did not make any inquiries regarding Richardson's financial circumstances before ordering reimbursement of BIDS attorney fees. Thus, we remand the case to the district court for compliance with K.S.A. 22-4513 and *Robinson*.

Affirmed in part, dismissed in part, and remanded.