No. 98,572

STATE OF KANSAS, *Appellee*, v. DORIAN RICHARDSON, *Appellant*.

(224 P.3d 553)

Opinion filed February 19, 2010.

*Rick Kittel,* of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Jennifer S. Tatum,* assistant district attorney, argued the cause, and *Cathy A. Eaton,* assistant district attorney, *Jerome A. Gorman,* district attorney, and *Paul J. Morrison,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Dorian Richardson appeals from his convictions of felony fleeing or attempting to elude a police officer, misdemeanor reckless driving, and misdemeanor driving with a suspended license.

Early in the morning of July 25, 2005, a Kansas City, Kansas, police officer, who was in uniform and was driving a marked police car, observed a Buick vehicle make a turn without an activated turn signal. He drove closer to the Buick from behind and turned on his siren and lights, at which time the driver of the Buick turned off its lights and sped away. The officer then notified the dispatcher and continued to pursue the Buick. In the course of the pursuit, the officer observed and videotaped the Buick run through five stop signs and a red light, turn without a turn signal five times, drive in the wrong lane twice, and drive as much as 40 miles per hour over the speed limit. While the first police officer pursued the Buick, other officers deployed stop sticks that punctured the Buick's tires. The Buick eventually came to a stop at an abandoned service station, and the driver fled on foot.

Police officers chased the fleeing suspect but lost sight of him when he ran around a corner. Shortly afterwards, they found Richardson hiding under some bushes close to where they had last seen the fleeing man, a couple of blocks from where the car had been abandoned. One officer identified Richardson as the driver of the Buick, having seen him behind the wheel illuminated by a pursuing patrol car's spotlight and by streetlights, and another officer identified Richardson as the man whom she saw running and falling directly in front of her car while he was fleeing the scene. Richardson was the registered owner of the Buick. His driver's license was suspended at the time of his arrest.

On July 25, 2005, the State of Kansas filed an information charging Richardson with one count of felony eluding a police officer, K.S.A. 8-1568, one count of misdemeanor reckless driving, K.S.A. 8-1566, and one count of misdemeanor driving while suspended, K.S.A. 8-262. The case was tried to a jury beginning on June 7, 2006, and on June 8, 2006, the jury announced it was unable to reach a verdict. The court declared a mistrial and set the case for a new trial.

At the second trial, the jury watched a video of the vehicle pursuit recorded from the patrol car that initially signaled the Buick to stop. Richardson elected not to testify at the trial. He did not contest that the chase took place as the State contended, instead

arguing a theory that he was not the driver of the Buick. The jury found him guilty of all three counts. The court sentenced him to a term of 15 months' imprisonment for fleeing or attempting to elude a police officer; a consecutive term of 6 months in jail and a $100 fine, paroled, for the second count; and a $100 fine, paroled, for the third offense. Richardson took a timely appeal.

The Kansas Court of Appeals affirmed Richardson's convictions and sentences but remanded the case to the district court for reconsideration and appropriate findings regarding reimbursement of attorney fees after taking into account Richardson's ability to pay in compliance with K.S.A. 22-4513 in *State v. Richardson*, 40 Kan. App. 2d 602, 194 P.3d 599 (2008). This court granted Richardson's petition for review on all issues.

I. DID THE DISTRICT COURT ERR BY FAILING TO INSTRUCT THE JURY ON THE SPECIFIC MOVING VIOLATIONS THAT CONSTITUTED AN ESSENTIAL ELEMENT OF FLEEING OR ATTEMPTING TO ELUDE A POLICE OFFICER?

The State charged Richardson with felony fleeing or attempting to elude a police officer based in part on an allegation that he committed five or more moving violations. Richardson contends on appeal that the trial court had a duty to instruct the jury on the specific charges that supported each moving violation and that the failure to give such an instruction was clearly erroneous.

An appellate court reviewing a district court's failure to give a particular instruction applies a clearly erroneous standard where a party neither requested an instruction nor objected to its omission. See K.S.A. 22-3414(3); *State v. Sappington*, 285 Kan. 158, 163, 169 P.3d 1096 (2007). " 'Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred.' [Citations omitted.]" *State v. Carter*, 284 Kan. 312, 324, 160 P.3d 457 (2007).

Jury Instruction No. 7 reads as follows:

"The defendant is charged in Count I with the crime of fleeing or attempting to elude a police officer. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant was driving a motor vehicle; and

"2. That the defendant was given a visual or audible signal by a police officer to bring the motor vehicle to a stop; and

"3. That the defendant intentionally failed or refused to bring the motor vehicle to a stop, or otherwise fled or attempted to elude a pursuing police vehicle; and

"4. That the police officer giving such a signal was in uniform, prominently displaying such officer's badge of office; and

"5. That the police officer's vehicle was appropriately marked showing it to be an official police vehicle;

"6. That the defendant committed five or more moving violations;

"7. That this act occurred on or about the 25th day of July, 2005, in Wyandotte County, Kansas."

This instruction closely tracks PIK Crim. 3d 70.09. The instructions offered no explanation or definition of what constituted the moving violations, and PIK Crim. 3d 70.09 does not discuss whether an explanation or definitions of the applicable violations should be provided. Richardson did not object to the instruction. The issue before this court is whether the instruction sufficed to allow the jury to convict Richardson of felony fleeing or attempting to elude a police officer.

K.S.A. 8-1568 reads in relevant part:

"(a) Any driver of a motor vehicle who willfully fails or refuses to bring such driver's vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle or police bicycle, when given visual or audible signal to bring the vehicle to a stop, shall be guilty as provided by subsection (c)(1), (2) or (3). The signal given by the police officer may be by hand, voice, emergency light or siren. The officer giving such signal shall be in uniform, prominently displaying such officer's badge of office, and the officer's vehicle or bicycle shall be appropriately marked showing it to be an official police vehicle or police bicycle.

"(b) Any driver who violates the provisions of subsection (a) and who: (1) Commits any of the following during a police pursuit: (A) Fails to stop for a police road block; (B) drives around tire deflating devices placed by a police officer; (C) engages in reckless driving as defined by K.S.A. 8-1566 and amendments thereto; (D) is involved in any motor vehicle accident or intentionally causes damage to property; or (E) commits five or more moving violations; or

"(2) is attempting to elude capture for the commission of any felony, shall be guilty as provided in subsection (c)(4)."

A first-time violation of subsection (a) is a class B nonperson misdemeanor; subsection (c)(4) makes a conviction under subsec-

tion (b) a severity level 9 person felony. See K.S.A. 8-1568(c)(1); K.S.A. 8-1568(c)(4).

This statute does not define what constitutes a moving violation and does not refer to any other statutory definition of moving violations. Other Kansas statutes and regulations, however, do refer to moving violations. Those provisions demonstrate that the definition of a moving violation is not intuitive.

K.S.A. 8-249(b), relating to records to be maintained by the Kansas Department of Revenue, Division of Motor Vehicles, requires the division to maintain records of individual licensees' "convictions of moving violations as defined by rules and regulations adopted by the secretary of revenue."

Certain statutes explicitly refer to the rules and regulations adopted pursuant to K.S.A. 8-249. See K.S.A. 8-2004(c), relating to traffic-control devices on state highways; K.S.A. 8-2118(e), relating to a uniform fine schedule for traffic infractions; and K.S.A. 28-172a(b), relating to docket fees.

Other statutes, including the subject of the present appeal, K.S.A. 8-1568, refer to moving traffic violations without reference to other rules and regulations. See K.S.A. 8-237(a), relating to restricted licenses; K.S.A. 8-255(a), relating to restricting or removing driving privileges; K.S.A. 8-296(g), relating to farm permits; and K.S.A. 40-277(c)(7), relating to automobile liability insurance policies.

Certain traffic violations are excluded by statute from application to other statutory provisions relating to moving violations. K.S.A. 8-1345(a) specifically excludes certain violations relating to child-passenger safety from being considered moving traffic violations as they relate to K.S.A. 8-255(a). K.S.A. 8-1560c, relating to violating maximum speed limits, likewise specifically limits certain speeding violations from being treated as moving traffic violations for purposes of K.S.A. 40-277(c). And K.S.A. 8-1742b excludes violations relating to restrictions on wide-base single tires from the definition of moving traffic violations under K.S.A. 8-255(a).

The administrative regulations are also not in agreement as to what constitutes a moving violation. K.A.R. 82-4-1(t), relating to the Kansas Corporation Commission, defines a moving violation

with respect to motor carriers as "the commission or omission of an act by a person operating a motor vehicle that could result in injury or property damage and that is also a violation of a statute, ordinance, or regulation of this or any other state." That definition is more open-ended than the definition of moving violation contained in K.A.R. 92-52-9, promulgated by the Kansas Department of Revenue, Motor Vehicle Drivers' Licenses Division pursuant to K.S.A. 8-249, which enumerates multiple Kansas statutory offenses, including violations of corresponding municipal ordinances or county resolutions in this state or similar statutes, ordinances, or regulations in other states, that constitute moving violations.

K.S.A. 8-1568, the statute at issue in the present case, does not refer explicitly to K.A.R. 92-52-9. The question of what constitutes a moving violation for purposes of felony fleeing or attempting to elude a police officer is not before this court in the present appeal, and we need not resolve it at this time. We simply note that the statutes and regulations present a complex statement of what is considered a moving violation for particular purposes.

Jurors may rely on their common knowledge and experience in evaluating testimony. See PIK Crim. 3d 52.09; *State v. Mack*, 228 Kan. 83, 89, 612 P.2d 158 (1980), *disapproved on other grounds State v. Warren*, 230 Kan. 385, 396-97, 635 P.2d 1236 (1981). If the meaning of moving violation were subject to common popular knowledge and understanding, there would be no need for administrative regulations defining the phrase and no need for statutes specifically including or excluding certain infractions from its definition. The definition of moving violation is not a simple matter of common knowledge among jurors.

The Court of Appeals found, see 40 Kan. App. 2d at 608-10, and the State has conceded, that the failure to instruct the jury on the specific underlying moving violations and their elements was erroneous. This is the correct conclusion. A trial court has the duty to define the offense charged in the jury instructions, either in the language of the statute or in appropriate and accurate language of the court. See *State v. Crawford*, 247 Kan. 223, 225, 795 P.2d 401 (1990). The trial court has the duty to inform the jury of every essential element of the crime that is charged. 247 Kan. at 227.

When a statute makes the commission of a crime or the intent to commit a crime an element of another crime, the jury instructions must set out the statutory elements of the underlying offense. See *State v. Rush*, 255 Kan. 672, 679, 877 P.2d 386 (1994) (burglary instructions must specify and give elements of predicate crime, even if trial evidence only supported possibility of one particular predicate crime); *State v. Linn*, 251 Kan. 797, 801-02, 840 P.2d 1133 (1992) *superseded by statute on other grounds State v. Hedges*, 269 Kan. 895, 8 P.3d 1259 (2000) (aggravated burglary instruction must set out elements of offense intended by accused in making unauthorized entry); *State v. Walker*, 21 Kan. App. 2d 950, 954, 910 P.2d 868 (1996) (court must instruct accurately on elements of attempt and arson that underlie attempted aggravated arson).

It does not matter whether the predicate crime is considered a separate element of the principal crime or merely enhances the sentencing penalty. We have held in light of *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), that merely because the legislature places a sentence enhancing factor within the sentencing provisions of the criminal code does not mean that the factor is not an essential element of the offense. *State v. Gonzales*, 289 Kan. 351, 371, 212 P.3d 215 (2009) (quoting *State v. Bello*, 289 Kan. 191, 199, 211 P.3d 139 [2009]).

Because Richardson did not object to the erroneous instruction, the reviewing court must determine whether it is convinced of a real possibility that the jury could have rendered a different verdict had the trial error not occurred. The Court of Appeals elected to review the record to determine whether there was evidence supporting a determination that the defendant committed five moving violations as defined by K.A.R. 92-52-9. The court found that the record contained ample evidence supporting that finding. 40 Kan. App. 2d at 609-11.

This court has made the omission of an element of a crime subject to harmless error analysis where the reviewing court examines the record to determine whether the omitted element was uncontested and supported by such overwhelming evidence that the jury verdict would have been the same without the omission. *State v.*

*Daniels*, 278 Kan. 53, 62, 91 P.3d 1147 *cert. denied* 543 U.S. 982 (2004) (citing *Neder v. United States*, 527 U.S. 1, 4, 144 L. Ed. 2d 35, 119 S. Ct. 1827 [1999], holding that the harmless error analysis of *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, *reh. denied* 386 U.S. 987 [1967], applies to a jury instruction that omits an element of an offense.) Under this standard, a reviewing court "asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." *Neder*, 527 U.S. at 19. Although an appellate court may review the record in a criminal prosecution and determine whether the evidence supports a jury's specific factual findings, harmless error analysis does not allow the court to speculate with legal finality which of a wide range of conduct, some legal and some illegal, a jury elected to consider moving violations.

This court cannot know whether the jury found that Richardson committed at least five moving violations, since they were not identified or defined to the jury, and we do not know which specific acts the jury deemed to be moving violations. It may be that the jury included speeding violations that are excluded from the list of moving violations compiled by the Kansas Department of Revenue. It may also be that the jury included acts that are not even statutory infractions, such as being in an intersection when a traffic light is yellow.

We will not step into the shoes of the jurors and convict Richardson of five moving violations of our choice—the jury did not make the necessary determination of guilt beyond a reasonable doubt on all the elements of the crime charged. The failure to provide the jury with instructions specifying and defining at least five underlying moving violations as elements of the fleeing or attempting to elude crime charged against Richardson constitutes clear error, and we reverse the conviction of felony fleeing or attempting to elude a police officer.

Richardson raises additional issues relating to the jury instructions and the underlying moving violations. He contends that the district court should have instructed the jury that the same offenses could not be used to support a guilty verdict for reckless driving and driving while suspended *and* felony fleeing or attempting to

elude a police officer. He also contends the district court was required to instruct the jury on the alleged moving violations as lesser included offenses of fleeing or attempting to elude. He finally argues that the convictions of reckless driving and driving while suspended were multiplicitous to the conviction of felony fleeing or attempting to elude. These issues are moot in light of our determination that it was clear error to fail to instruct on the specific moving violations, but they further illustrate the problems that arise from a failure to make specific instructions. Neither the district court nor this court on review can ascertain on which moving violations the jury based its felony conviction, and it is unknowable whether the jury used the same offenses for multiple convictions.

## II. DID THE DISTRICT COURT COMMIT REVERSIBLE ERROR WHEN IT DENIED RICHARDSON'S REQUEST FOR NEW COUNSEL?

On August 21, 2006, the district court conducted a hearing on pretrial motions. During the hearing, Richardson addressed the court and asserted that his appointed counsel had a conflict of interest and had spoken with other parties about matters relating to his defense. He also asserted that his previous appointed counsel had communicated confidential information to his new counsel. He contends on appeal that he had a valid reason for seeking appointment of new counsel and the district court committed reversible error when it denied his request for new counsel.

The decision whether to appoint new counsel is subject to review under an abuse of discretion standard. *State v. McGee*, 280 Kan. 890, 894, 126 P.3d 1110 (2006). Judicial discretion is abused when the district court's action is arbitrary, fanciful, or unreasonable. The test for abuse of discretion is whether any reasonable person would take the view adopted by the district court. 280 Kan. at 894.

"To warrant the appointment of new trial counsel, a defendant must show 'justifiable dissatisfaction' with his or her appointed counsel. 'Justifiable dissatisfaction' may be demonstrated by showing a conflict of interest, an irreconcilable conflict, or a complete breakdown in communications between the defendant and his or her appointed attorney. [Citation omitted.]" 280 Kan. at 894.

The district court engaged in an extended dialogue with Richardson, his attorney, and the attorney for the State and inquired at

length about the nature of the asserted conflicts and the basis for Richardson's dissatisfaction with his attorney. Richardson's objections to his counsel were vague and had more to do with Richardson's unhappiness with being prosecuted than with the details of counsel's performance. Richardson said that he did not trust his attorney, that his attorney may not have spent enough time preparing for the trial, and that his attorney had spoken with a potential alibi witness.

The court noted that Richardson was being represented by his fourth attorney at the time, that the attorney was a respected lawyer with decades of trial experience, and the attorney had read the complete transcript of the first trial and had attempted to contact an alibi witness. The court allowed an extended recess for Richardson to speak with his attorney privately. The court allowed Richardson to attempt to contact his alibi witness. The court also allowed recesses for Richardson and his attorney to speak with the prosecutor regarding a possible plea. The State offered to reduce the charge to attempted fleeing or eluding a police officer—a severity level 10 felony—and to reduce the requested sentence to time served. Richardson rejected that offer.

The court found that Richardson's attorney had committed no breach of the attorney-client privilege and that contacts with other parties had been made solely for the purpose of preparing the best available defense. The court elected to deny Richardson's request for new counsel.

Nothing in the record demonstrates a compelling communications problem or an irreconcilable conflict of such magnitude between Richardson and his attorney that this court would find that justifiable dissatisfaction necessarily existed. The district court did not abuse its discretion by refusing to appoint new counsel.

III. DID THE SENTENCING COURT VIOLATE K.S.A. 22-4513 WHEN IT FAILED TO CONSIDER ON THE RECORD RICHARDSON'S ABILITY TO PAY ATTORNEY FEES AND THE FINANCIAL BURDEN THOSE FEES WOULD IMPOSE ON HIM?

The trial court ordered Richardson to pay the Board of Indigents' Defense Services (BIDS) attorney fees in the amount of

$500 as partial reimbursement for the cost of providing a court-appointed attorney. The court made no findings on the record regarding Richardson's financial resources, his ability to pay the fees, and the burden that the reimbursement would impose on him. The State concedes that this was reversible error, and the Court of Appeals, 40 Kan. App. 2d at 619, remanded the case for a determination of Richardson's financial circumstances and compliance with K.S.A. 22-4513 and *State v. Robinson*, 281 Kan. 538, 132 P.3d 934 (2008).

This is the correct result. K.S.A. 22-4513(a) requires that all expenditures made by the BIDS to provide counsel and other defense services to a convicted defendant are to be taxed against the defendant. The statute further requires that "[i]n determining the amount and method of payment of such sum, the court *shall* take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose." (Emphasis added.) K.S.A. 22-4513(b); *Robinson*, 281 Kan. at 546-47; see also *State v. Davis* 283 Kan. 569, 585-86, 158 P.3d 317 (2007) (reversing trial court on issue of BIDS attorney fees because it made "no explicit, on-the-record finding at the original assessment of BIDS fees against Davis regarding his ability to pay the fees or the financial burden the fees would impose"). Failure to consider those factors on the record require that the order for reimbursement of BIDS attorney fees be vacated and the case be remanded for compliance with K.S.A. 22-4513. See *State v. Scaife*, 286 Kan. 614, Syl. ¶ 6, 186 P.3d 755 (2008).

Because we reverse the conviction of felony fleeing or attempting to elude a police officer, Richardson's additional issue relating to *Apprendi* and his sentence to the high-end of the sentencing guidelines grid box is moot. But see *State v. Johnson*, 286 Kan. 824, Syl. ¶¶ 5-6, 190 P.3d 207 (2008).

## CONCLUSION

The decisions of the Court of Appeals and the district court are affirmed in part and reversed in part. The convictions of reckless driving and driving while suspended are affirmed. The conviction of felony fleeing or attempting to elude a police officer is reversed,

and the case is remanded to the district court for a new trial on that charge. The imposition of BIDS attorney fees is reversed, vacated, and remanded with directions for reconsideration and appropriate findings after taking into account the statutory factors.

Affirmed in part, reversed in part, and remanded with directions to the district court.