NOT DESIGNATED FOR PUBLICATION

No. 116,056

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ERIC JAMES RHYMES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed September 22, 2017. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Kathryn Devlin*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., STANDRIDGE, J., and WALKER, S.J.

PER CURIAM: Eric James Rhymes, an inmate at Lansing Correctional Facility (LCF), appeals following his conviction of trafficking contraband in a correctional institution. Rhymes argues the district court lacked subject matter jurisdiction to enter judgment against him because the jury convicted him of a crime different than the one charged in the complaint. But Rhymes actually is arguing that the district court erred by omitting an element of the charged offense from the jury instruction. Although we agree the court erred by doing so, we find the error to be harmless. Rhymes also argues the district court erred by denying a pretrial motion to suppress statements he made to an LCF investigator. We find no error in the court's decision to deny Rhymes' motion.

1

FACTS

Rhymes worked as a photography porter in the visiting area of LCF, taking pictures of inmates and visitors. The visiting area was monitored by correctional officers and video cameras in order to prevent, among other things, the introduction of contraband into the facility. Inmates were subject to pat-down searches prior to entering the visiting area and when leaving the visiting area. Consistent with this policy, Rhymes was searched when he arrived for work and again before he left, but he otherwise had freedom to move in and out of the visiting area without being searched while he was working.

On November 2, 2014, LCF Correctional Officer Royce Pittman conducted a random search of inmates' coats that were hanging in a common area just outside the visiting area. Inside the lining of one of the coats, Pittman discovered a homemade pocket containing the fingers of surgical gloves that were filled with a substance later identified as methamphetamine. Video footage from that day showed Rhymes hanging the coat up and later accessing it several more times throughout the day. Rhymes was the only person seen near the coat. When confronted, Rhymes admitted that the coat belonged to him but denied ownership of the contraband inside. Officer Pittman filed a disciplinary report and Rhymes was ultimately sanctioned for the incident.

The State later filed a criminal complaint against Rhymes, charging him with one count of possession of methamphetamine and one count of trafficking contraband in a correctional institution. The case proceeded to a jury trial. At trial, Tomas Zamora, a former LCF investigator, testified that Rhymes admitted he owned the coat and confessed he was "just basically muling the stuff in for other inmates." Zamora explained to the jury that "[a] mule is someone who carries contraband into the facility." Because neither the State nor the defense had any prior knowledge of Rhymes' confession to Zamora, the district court declared a mistrial.

The court scheduled the case for another jury trial. Before this second trial, the State filed a notice of its intent to introduce Rhymes' confession into evidence. Rhymes responded by filing a motion to suppress the statements he made to Zamora. In the motion, Rhymes claimed the statements were inadmissible because they were involuntary and unreliable. The court held a hearing to determine whether Rhymes' statements to Zamora were voluntarily provided. After considering the evidence presented at the hearing, the district court denied Rhymes' motion to suppress and deemed the statements admissible at trial. See *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964). Over Rhymes' objections, Zamora then testified at the second trial that Rhymes confessed to bringing large amounts of drugs into the facility in exchange for a small amount of drugs for his own personal use. Zamora also testified that Rhymes admitted during the interview to bringing methamphetamine into the facility on November 2, 2014.

The jury found Rhymes guilty of both possession of methamphetamine and trafficking contraband in a correctional institution. Following the jury's verdict, Rhymes filed a motion to set aside one of the convictions because the two convictions were multiplicitous. The district court agreed and vacated Rhymes' conviction for possession of methamphetamine. The court sentenced Rhymes to 53 months in prison based on the conviction for trafficking contraband.

ANALYSIS

Rhymes raises two alternative arguments on appeal. First, Rhymes argues the district court lacked subject matter jurisdiction over his conviction for trafficking contraband in a correctional institution because the jury convicted him of an offense different than the one charged in the criminal complaint. As discussed more fully below, however, Rhymes' argument is actually a challenge to the jury instruction based on a missing element of the crime. In the alternative, Rhymes argues the district court erred in

3

denying his motion to suppress the statements he made to Zamora. We address each of Rhymes' arguments below.

1. *Jury instruction*

To place Rhymes' argument in context, we begin our discussion with the relevant provisions of K.S.A. 2013 Supp. 21-5914, which is the criminal statute prohibiting traffic in contraband in a correctional facility:

"(a) Traffic in contraband in a correctional institution or care and treatment facility is, without the consent of the administrator of the correctional institution or care and treatment facility:

(1) Introducing or attempting to introduce any item into or upon the grounds of any correctional institution or care and treatment facility;

(2) taking, sending, attempting to take or attempting to send any item from any correctional institution or care and treatment facility;

(3) any unauthorized possession of any item while in any correctional institution or care and treatment facility;

(4) distributing any item within any correctional institution or care and treatment facility;

(5) supplying to another who is in lawful custody any object or thing adapted or designed for use in making an escape; or

(6) introducing into an institution in which a person is confined any object or thing adapted or designed for use in making any escape."

The State charged Rhymes with violating subsection (a)(1) of the statute:

"That on the 2nd day of November, 2014, in Leavenworth County, Kansas, Eric J[.] Rhymes, then and there being present did unlawfully, feloniously and intentionally, knowingly or recklessly *introduce, or attempt to introduce, Methamphetamine, into or upon the grounds of the Lansing Correctional Facility*, a correctional institution. In violation of K.S.A. 2013 Supp. 21-5914(a)(1) & (b)(2)(A), Traffic in Contraband in a

4

Correctional Institution or Care and Treatment Facility, a severity level 5 nonperson felony." (Emphasis added.)

When the district court issued oral and written jury instructions, however, it instructed the jury with trafficking contraband in a correctional institution, contrary to subsection (a)(3) of the statute:

> "The defendant is charged with traffic in contraband in a correctional institution. The defendant pleads not guilty.
> "To establish this charge, each of the following claims must be proved:
> 1. *The defendant had the unauthorized possession of methamphetamine while in a correctional institution.*
> 2. The defendant did so intentionally.
> 3. The defendant acted without the consent of the administrator of the correctional institution.
> 4. This act occurred on or about the 2nd day of November 2014, in Leavenworth County, Kansas." (Emphasis added.)

Because the jury convicted him of a crime (trafficking via possessing methamphetamine within the correctional institution) that differed from the crime with which he was charged (trafficking via introducing or attempting to introduce methamphetamine to the correctional institution), Rhymes argues the court did not have subject matter jurisdiction to enter judgment against him, which means his conviction must be vacated. In response, the State claims Rhymes' challenge to jurisdiction is actually an improper challenge to the sufficiency of the complaint.

Neither party has correctly framed the issue presented for decision here. The crux of Rhymes' claim of error is that the criminal complaint charged Rhymes with trafficking as defined by K.S.A. 2013 Supp. 21-5914(a)(1) (introducing or attempting to introduce methamphetamine to the correctional institution), but the jury convicted Rhymes of trafficking as defined by that statute in subsection (a)(3) (possessing methamphetamine

5

within the correctional institution). Although Rhymes claims he was convicted of a crime different than the one with which he was charged, the record does not support his claim.

The State charged Rhymes with traffic in contraband in a correctional institution contrary to K.S.A. 2013 Supp. 21-5914, and the verdict form reflects that the jury found Rhymes guilty of traffic in contraband in a correctional institution under that same statute. Neither the jury instruction nor the verdict form referred to the applicable statute governing the traffic of contraband in a correctional institution, let alone a particular subsection of the statute. At the sentencing hearing, defense counsel briefly commented that the jury had been instructed using the language in K.S.A. 2013 Supp. 21-5914(a)(3), but there was no response to counsel's comment and no other statements on the record regarding the issue. The presentence investigation report, the sentencing guidelines journal entry of judgment, and the district court's journal entry of allocution all reflect that the jury convicted Rhymes of traffic in contraband in a correctional institution under K.S.A. 2013 Supp. 21-5914, albeit under subsection (a)(1). Based on the facts presented and the applicable law, we find the issue is not, as Rhymes asserts, whether the court had jurisdiction to enter judgment against Rhymes for the crime of conviction. Instead, the issue is whether the court erred by providing a jury instruction that set forth elements of a crime different than the elements of the crime as described in the charging document.

When reviewing a jury instruction challenge, an appellate court applies the following standard of review:

"'(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and

6

degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).'" *State v. Fisher*, 304 Kan. 242, 256-57, 373 P.3d 781 (2016).

Rhymes concedes that he did not object to the district court's instruction below. But "[a] court may consider an error in the instructions that has not been preserved as required by subsection (d)(1) if the giving or failure to give an instruction is clearly erroneous and the error affects substantial rights." K.S.A. 2016 Supp. 60-251(d)(2). Thus, Rhymes' challenge to the jury instruction here is reviewable.

Next, we must determine whether there was any error. Although the instruction provided the State had to prove the unauthorized possession of contraband in a correctional institution in order to establish the charge, the instruction did not provide that the State also had to prove that Rhymes introduced or attempted to introduce the contraband into or upon the grounds of the correctional facility. This omission left the jury without a legal standard to determine that aspect of the trafficking contraband charge. As a result, the instruction was not legally appropriate and constituted error.

Having determined it was error to give the instruction that did not require the State to prove that Rhymes introduced or attempted to introduce the contraband in his possession, we next must determine whether that error was harmless. In a case like this, where the error is omission of an element of the offense charged when instructing the jury, the United States Supreme Court has recognized that error may be harmless only if the omitted element was "uncontested and supported by overwhelming evidence." *Neder v. United States*, 527 U.S. 1, 17, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). The Kansas Supreme Court adopted this standard in *State v. Richardson*, 290 Kan. 176, 182-83, 224 P.3d 553 (2010). In *State v. Hargrove*, 48 Kan. App. 2d 522, 530, 293 P.3d 787 (2013), a panel of our court further clarified this elevated standard:

"The test for harmlessness is twofold. Not only must the evidence bearing on the omitted element approach the irrefutable, a defendant effectively has to concede that component of the charged crime. Such a concession might be inferred from the absence of contrary evidence or explanation developed in challenging the government's case or offered as part of the defense case. The standard is particularly rigorous. A lesser measure would permit a court to impermissibly supplant the jury's fact-finding duty in a criminal case by substituting its assessment of the evidence on a contested issue."

Applying this elevated standard here, we find the evidence presented at trial to prove Rhymes introduced or attempted to introduce methamphetamine into the correctional facility is essentially irrefutable. Moreover, we infer from the absence of contrary evidence or explanation at trial that Rhymes effectively conceded that he committed the crime of introducing or attempting to introduce methamphetamine into the correctional facility.

As a photography porter, Rhymes had freedom to move in and out of the visiting area without being searched while he was working. On the day the contraband was found in his coat, Rhymes was searched before entering the visiting area to take pictures of inmates and their visitors. Video footage from that day showed Rhymes hanging the coat up and later accessing it several more times throughout the day. Rhymes was the only person seen near the coat. In a random search of inmates' coats hanging in the common area outside the visiting area, Officer Pittman discovered methamphetamine in a pocket inside the lining of the coat Rhymes hung up and accessed throughout the day. After being read his *Miranda* rights, Rhymes confessed to Zamora that he brought the methamphetamine into the facility on November 2, 2014, and that he was bringing large amounts of unauthorized contraband (drugs) into the facility in exchange for a small amount of drugs for his own personal use.

The evidence that Rhymes attempted to introduce methamphetamine into the correctional facility is essentially irrefutable, and there is no evidence in the record from

which we can reasonably infer that Rhymes did not attempt to do so. Rhymes did not present any evidence or argue at trial that he did not attempt to introduce into the facility the methamphetamine discovered in his coat lining. Neither does he make that argument on appeal. Instead, he argues only that his conviction must be vacated because an element of the offense charged was omitted from the jury instruction on that charge. It appears from this argument that Rhymes is advocating for a structural error standard of review. But both the United States Supreme Court and our Supreme Court have rejected that argument in favor of a standard of review that recognizes an error may be harmless if the omitted element was "uncontested and supported by overwhelming evidence." See *Neder*, 527 U.S. at 17; *Richardson*, 290 Kan. at 182-83. Upon review of the entire record here, we find the omitted element (attempting to introduce contraband into the facility) was both uncontested and supported by overwhelming evidence. In addition, the evidence presented by the State to prove trafficking contraband in a correctional facility is the same under the language of the complaint and the language of the jury instruction.

2. *Motion to suppress*

Rhymes argues the district court erred in denying his motion to suppress, claiming that the statements he made to Zamora were involuntary and that the evidence surrounding his alleged confession was unreliable.

Rhymes objected during Zamora's testimony at trial when the State sought to introduce evidence of Rhymes' statements, thereby preserving the issue for appeal. See *State v. Richard*, 300 Kan. 715, 726, 333 P.3d 179 (2014) (when district court denies motion to suppress, moving party must object to introduction of that evidence at time it was offered at trial to preserve issue for appeal). In reviewing the decision or ruling on a motion to suppress a confession, the appellate court first reviews the factual findings under a substantial competent evidence standard, then reviews the ultimate legal conclusion de novo. In so doing, the appellate court does not reweigh the evidence, assess

the credibility of witnesses, or resolve conflicting evidence. The State bears the burden of proving by a preponderance of the evidence that a confession was voluntary. *State v. Dern*, 303 Kan. 384, 392, 362 P.3d 566 (2015).

Our Supreme Court has held that "[a] criminal defendant is deprived of due process when his or her conviction is based, in whole or in part, upon the coerced statement of a witness." *State v. Daniels*, 278 Kan. 53, 65, 91 P.3d 1147 (2004). "The primary consideration to be given to a criminal defendant's inculpatory statement is its voluntariness." *State v. Swindler*, 296 Kan. 670, 678, 294 P.3d 308 (2013). In determining whether a confession was voluntary, the court looks at the totality of the circumstances surrounding the confession and considers the following nonexclusive factors: (1) the accused's mental condition; (2) the manner and duration of the interrogation; (3) the ability of the accused to communicate on request with the outside world; (4) the accused's age, intellect, and background; (5) the fairness of the officers in conducting the interrogation; and (6) the accused's fluency with the English language. *State v. Woods*, 301 Kan. 852, 867, 348 P.3d 583 (2015). The goal of examining these factors is to determine whether a statement "was the product of the free and independent will" of the person being interrogated. *State v. Lane*, 262 Kan. 373, 385, 940 P.2d 422 (1997).

At the hearing on Rhymes' motion to suppress, Zamora testified that he was the lead investigator in Rhymes' case and that Rhymes had asked to speak with him about the incident that occurred on November 2, 2014. Zamora met with Rhymes in a closed, secure room. Rhymes was handcuffed during the conversation, which lasted approximately 20 to 30 minutes. Zamora claimed he informed Rhymes that he was being charged with felony crimes for introducing contraband into a correctional facility. Zamora stated that prior to asking Rhymes any questions, he orally advised Rhymes of his *Miranda* rights and that Rhymes indicated his understanding and waiver of those rights by signing and initialing a form setting forth the rights. Zamora had no concerns

10

about Rhymes' mental state or Rhymes' ability to understand their conversation. According to Zamora, he recorded the interview on a tape recorder, but the recording was deleted after Zamora left his job at LCF.

Zamora further testified that when he completed his initial report in November 2014 about the conversation with Rhymes, he did not include Rhymes' confession in the report because he was considering whether to use Rhymes as a confidential informant and was waiting to speak to his supervisor about that possibility. Zamora ultimately decided not to use Rhymes as an informant based on unreliable information Rhymes had given in the past. Zamora claimed he had forgotten that the confession was not included in the report until he testified at Rhymes' first trial. In October 2015, Zamora filed an addendum to his initial report that included Rhymes' confession.

Following Zamora's testimony, defense counsel asked the district court to exclude any of Rhymes' statements not included in Zamora's initial report, alleging that such statements were unreliable and untrustworthy. Defense counsel also argued that Rhymes' statements could not be considered voluntary because his *Miranda* waiver occurred after the prison disciplinary proceedings had been completed and Rhymes reasonably believed that any investigation had ended. The district court ultimately concluded that Rhymes' statements were voluntary and thus admissible, because Rhymes had contacted Zamora to make a statement, Zamora advised Rhymes of his *Miranda* rights, and there was no indication that Rhymes did not understand his rights or that the statements were otherwise involuntary. The court further found the fact that Rhymes already had been disciplined for the incident irrelevant with respect to the voluntariness of his statements or his willingness to waive his rights. Finally, the court accepted Zamora's explanations for why Rhymes' confession was not included in the initial report and why there was no recording of the interview, concluding there had been no showing of bad faith.

11

Rhymes advances two arguments in support of his claim that the district court erred in denying his motion to suppress. First, Rhymes suggests that Zamora did not conduct the interview fairly because Rhymes was unaware of the potential consequences he faced by waiving his *Miranda* rights. Rhymes asserts that because he already had been sanctioned as a result of prison disciplinary proceedings, he reasonably believed he would not face any additional charges. Rhymes acknowledges Zamora's testimony stating Zamora told Rhymes he had been charged with felony crimes. But Rhymes notes Zamora did not include this information in the report and that the criminal charges against him were not filed until several months after the interview. Thus, Rhymes contends that he could not voluntarily have waived his *Miranda* rights because he did not know he was facing criminal charges. Second, Rhymes argues that the evidence surrounding the alleged confession was unreliable because Zamora failed to include information about the confession in the initial report and never explained how including the confession in the report would have prevented him from using Rhymes as a confidential informant. Rhymes also points out that there was no evidence to corroborate the confession because Zamora's recording had been deleted.

Factors that may raise red flags when considering whether an interrogation was conducted fairly are if the police threatened a suspect or promised some benefit in exchange for cooperation, minimized the seriousness of confessing to involvement in a crime, falsely told the suspect that there was evidence indicating his or her involvement in the crime, or used other deceptive techniques. See *State v. Swanigan*, 279 Kan. 18, 32-36, 106 P.3d 39 (2005); *State v. Fernandez-Torres*, 50 Kan. App. 2d 1069, 1082-83, 337 P.3d 691 (2014). There is no evidence in the record that Zamora threatened Rhymes or promised him any benefit in exchange for cooperation. Nor did Zamora minimize the seriousness of confessing to involvement in a crime; rather, Zamora testified that he told Rhymes he was facing felony criminal charges. And there is no indication that Zamora provided false information regarding evidence of Rhymes' involvement in the crime or used any other deceptive techniques.

Moreover, there is substantial competent evidence in the record to support the findings of fact made by the district court. Rhymes asked to speak with Zamora. Nevertheless, Zamora informed Rhymes of his *Miranda* rights before any questioning began. The conversation took place in a private room at LCF and lasted only 20 to 30 minutes. Zamora was handcuffed during the interview, which was standard practice at LCF. There is no indication that Rhymes asked to communicate with anyone else during the course of his interview, nor is there any indication that he would have been prevented from doing so. In fact, Zamora informed Rhymes of his right to speak to an attorney and that an attorney would be brought to the facility if Rhymes wanted to consult with one. There is no suggestion that Rhymes lacked an understanding of the English language or that he otherwise lacked an ability to understand Zamora's questions. The totality of the circumstances present here support the district court's conclusion that Rhymes' confession was voluntary. Rhymes' claim that the evidence surrounding the confession was unreliable is no more than an invitation to assess Zamora's credibility and reweigh the evidence that was presented to the district court, which we cannot do. See *Dern*, 303 Kan. at 392. The district court did not err in denying Rhymes' motion to suppress.

Affirmed.