NOT DESIGNATED FOR PUBLICATION

No. 117,106

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

THOMAS LEE STUTEVILLE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; J. DEXTER BURDETTE, judge. Opinion filed May 18, 2018. Affirmed.

*Clayton J. Perkins*, of Kansas Appellate Defender Office, for appellant.

*Ethan Zipf-Sigler*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN, J., and HEBERT, S.J.

PER CURIAM: A jury convicted Thomas Lee Stuteville of one count burglary of a nondwelling, one count of theft, and one count of criminal damage to property less than $1,000. On appeal, Stuteville raises three issues for our consideration: (1) whether the jury was provided clearly erroneous jury instructions; (2) whether the prosecutor erred in giving the jury a personal opinion regarding evidence; and (3) whether the cumulative effect of the errors requires reversal of his convictions. For the reasons set forth later, we reject these arguments. Accordingly, we affirm.

On October 19, 2014, Kansas City police officers were sent to an industrial complex once used for pharmaceutical manufacturing and animal research. The dispatch report described a witness' account of seeing a parked vehicle near the industrial complex and people walking up a hill toward the abandoned complex. After responding to the scene, Officer Chris O'Neill saw the suspicious vehicle and then approached the building. He witnessed three people who, upon seeing him, ran in two different directions. Officer O'Neill did not give chase but radioed for backup. He then checked the area where he saw the suspects run from and found backpacks full of cut copper piping. Officer Wade Smith responded to the request for backup and found Stuteville and Jeanne Tucker exiting the woods and arrested both of the suspects. Ultimately, Stuteville, Tucker, and Steve McQueen were charged with crimes related to the incident. Stuteville was charged with burglary, felony theft, and misdemeanor criminal damage to property. A jury trial was held on February 16-17, 2016.

When Officer O'Neill testified at trial, he told the jury that he began his investigation by running the parked vehicle's tags to ensure it was not stolen, and he concluded that it was not stolen. He then proceeded to check the wooded area around the complex. He spotted three people, later identified as Stuteville, Tucker, and McQueen. He testified that the three people were carrying bags and buckets containing cut copper piping which he believed was cut from inside the building. He further testified that when they saw him, they dropped their bags and buckets and ran. McQueen ran in one direction, while Stuteville and Tucker ran in another direction. After telling the suspects to stop running, Officer O'Neill radioed for additional help, but he did not run after the suspects. Over the radio, Officer O'Neill described two of the suspects as males wearing dark clothing and one female wearing red clothing.

In responding to Officer O'Neill's request for backup, Officer Smith parked his patrol vehicle behind the suspects' vehicle and simply waited to see if the suspects would return to it. After about five to ten minutes, Officer Smith saw Stuteville and Tucker and

2

arrested both of them on suspicion of committing burglary. Stuteville was wearing dark clothing and Tucker was wearing a red sweatshirt.

Detective Ryan Fincher testified at trial that after being arrested, Stuteville made a few comments to him regarding the incident. Specifically, Stuteville "admitted that Steve McQueen, who [Stuteville] was with, was there on the property to steal copper and [Stuteville] said he didn't want any part of it and said he was leaving." He further testified that Stuteville admitted to going up to the building's garage door but could not recall whether he admitted to ever entering the building.

Tucker pled guilty in her own case and testified against Stuteville at his trial. Tucker was offered no agreement in consideration of her testimony. Both the State and Stuteville hinged their arguments at trial on the testimony given by Tucker and the credibility of her testimony when compared to Stuteville's testimony.

In her testimony, Tucker clarified that Stuteville had indeed gone into the building and participated in taking the copper from the building. Tucker explained that she and Stuteville first met up at a food kitchen in Kansas City. Then, at some point in the day, she and Stuteville dropped off a washer and dryer set at a friend's house. Later, she and Stuteville drove his vehicle to pick up McQueen and two other men near a scrapyard that evening. The five of them drove to the industrial complex and made their way onto the property through a hole in a fence. They lifted an unlocked, garage-type door of the abandoned building and went inside. Tucker testified that McQueen and another man cut the copper piping while Stuteville and another man put the pipes into bags and buckets. Then, when Stuteville saw the police officer, they started running in different directions. After running out of the woods and being arrested alongside Stuteville, Tucker had the arresting officer return with her to the building. She told the officer that she, Stuteville, and others had cut copper pipes out of the building and pointed out some of the spots where they cut the pipes.

3

Stuteville's defense at trial was that he was an unwilling participant in the crime. He maintained that he simply dropped off some individuals and attempted to pick them up without knowledge of their wrongdoing. In making his defense, Stuteville's testimony differed from Tucker's in significant ways. Stuteville testified that on the day in question, he went to McQueen's house, which was where Tucker was also located, and gave McQueen, Tucker, and two other men a ride to the industrial complex. After dropping the three men off, Stuteville and Tucker then delivered a washer and dryer to a friend's house to sell the set while there. Stuteville placed the washer and dryer on the lawn of the friend's house and watched the Chiefs game while waiting for potential buyers.

Roughly three or four hours later, McQueen called Stuteville, requesting a ride back from where the men had been dropped off. Stuteville and Tucker drove to the industrial complex to pick the men up. When they arrived, Stuteville and Tucker hiked up a hill toward the industrial complex, went through a hole in the fence and waited outside. Tucker then entered the building while Stuteville waited by the fence and returned with the three men about 15 minutes later. The men had cut and bagged copper pipes from the walls of the building and carried them from the building. While outside the building, Stuteville told the group of men that he did not want to have anything to do with what they were doing because he was still on probation for an unrelated offense. Moreover, he told them that the pipe could not be placed inside his vehicle. It was then that the group saw Officer O'Neill and ran from the scene. Stuteville testified that after being arrested, he told the police that he did not have anything or want anything to do with what had transpired inside the building. Stuteville consistently denied knowing that the men had planned to burglarize the building and denied ever entering the building. Stuteville consistently claimed that he only went as far as the fencing of the building, entering the most outer fence but not the inner fence. Additionally, Stuteville claimed that he did not carry any bags because he was physically incapable of carrying them due to an injured shoulder and a deformed foot.

4

The investigators called to the scene testified that they walked through the building and gathered only a small amount of evidence. No DNA or fingerprint evidence was taken because the crime was considered a low priority, property crime. One investigator did take a photo of what appeared to be a shoe pattern on a piece of plastic found in the building and also a picture of the tread of Stuteville's shoe. He laid a marker next to the shoeprint on the plastic to identify the mark and the size of the print in case a comparison needed to be made. The investigator described the print as appearing to be "pretty distinctive." No analysis was conducted on the prints beyond taking the pictures and comparing the two side by side, but one investigator did testify that the prints looked very similar.

Ultimately, the jury found Stuteville guilty of one count burglary of a nondwelling, one count of theft, and one count of criminal damage to property less than $1,000. Without objection, Stuteville was found having a criminal history score C and was sentenced to 29 months of prison for the burglary, to a 12-month jail term for the theft, and to a 6-month jail term for the criminal damage. All sentences were run consecutive to each other and a 12-month term of postrelease supervision was also imposed.

*Were the Jury Instructions Clearly Erroneous?*

At trial, the jury was provided with the correct instructions for burglary and theft. The burglary instruction stated:

> "The defendant is charged in Count I with Burglary. The defendant pleads not guilty.
> "To establish this charge, each of the following claims must be proved:

"1. That the defendant, or another for whose conduct he was criminally responsible, entered a building, to-wit: commercial building located at 1201 Douglas Avenue, Kansas City, KS, which is not a dwelling.

"2. The defendant did so without authority.

"3. The defendant did so with the intent to commit a theft therein.

"4. This act occurred on or about the 19th day of October, 2014, in Wyandotte County, Kansas."

The theft instruction stated:

"The defendant is charged in Count II with Theft. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. Kaw Valley Bank was the owner of the property.

"2. That the defendant, or another for whose conduct he was criminally responsible, obtained or exerted unauthorized control over the property, to-wit: copper pipe and valves.

"3. The defendant intended to deprive Kaw Valley Bank permanently of the use or benefit of the property.

"4. The value of the property was less than $1,000.

"5. This act occurred on or about the 19th day of October, 2014, in Wyandotte County, Kansas."

The burglary and theft instructions were followed by an additional instruction that those crimes had to be proven under a "knowingly" standard. Specifically, the knowingly instruction stated: "The State must prove that the defendant committed the crime of Burglary [and Theft], knowingly. A defendant acts knowingly when the defendant is aware of the nature of his conduct that the State complains about." There was not an instruction defining "intentional," "intentionally," or "intentional acts."

6

Stuteville argues on appeal that the instructions given to the jury were deficient because they wrongly instructed the jury that burglary and theft are "knowing" crimes when they require intent. Stuteville also argues that the trial court should have included a definition of "intentional acts" to instruct on the appropriated mental state required for burglary, theft, and liability for crimes of another.

The State concedes that the instructions incorrectly advised the jury of the applicable culpability required to find Stuteville guilty of burglary and theft and was therefore likely errant. The State, nevertheless, argues that the error is not reversible for three reasons. First, the State argues that the jury was fully aware and apprised of what it needed to believe before finding the defendant guilty of the crimes for which he was charged because the intent element only touches on what the defendant intends to do after the entry or taking respectively. Next, the State asserts that the failure to give a culpable mental state instruction as to a single element of the burglary and theft counts was not clear error because Stuteville failed to request a culpable mental state instruction. Last, the State argues that because there was such overwhelming evidence against Stuteville that the jury would have necessarily found that Stuteville committed the charged offenses intentionally.

Except as otherwise provided, a culpable mental state is an essential element of every crime. K.S.A. 2017 Supp. 21-5202(a). Omitting an essential element of a charged offense from a jury instruction violates a defendant's jury trial rights as protected by the Sixth Amendment to the United States Constitution and §§ 5 and 10 of the Kansas Constitution Bill of Rights. *State v. Hargrove,* 48 Kan. App. 2d 522, 529-30, 293 P.3d 787 (2013); see *Neder v. United States, 5*27 U.S. 1, 18, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). Regardless of the violation, "[a] party cannot claim instructional error unless he or she either objects to the error or the error is determined to be clearly erroneous. [Citations omitted.]" *State v. Barlett*, No. 112,573, 2016 WL 2772842, at \*6 (Kan. App.

7

2016) (unpublished opinion), *rev. granted* 306 Kan. 1320 (2017). Stuteville did not object to the instructions. This court therefore applies a clear error rule. *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014).

The clear error rule is not a standard of review, that is, a framework for determining whether error occurred. Instead, it supplies a basis for determining if an error requires reversal of a conviction. *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012); see *State v. Lewis*, 299 Kan. 828, 856, 326 P.3d 387 (2014). In evaluating whether an instruction rises to the level of clear error, the issue of "[r]eversibility is subject to unlimited review and is based on the entire record. It is the defendant's burden to establish clear error under K.S.A. 22-3414(3). [Citation omitted.]" *Betancourt*, 299 Kan. at 135. First, this court must determine whether the instruction was erroneous and if erroneous, this court then determines "whether it is firmly convinced that the jury would have reached a different verdict without the error." 299 Kan. at 135. If clear error is established, reversal is required. 299 Kan. at 135.

> "'In reviewing jury instructions, an appellate court is required to consider all the instructions together, read as a whole, and not to isolate any one instruction. If the instructions properly and fairly state the law as applied to the facts of the case and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous.' [Citation omitted.]" *State v. Sisson*, 302 Kan. 123, 130, 351 P.3d 1235 (2015).

*No clear error in use of "knowingly" instruction*

All crimes in which the mental culpability requirement is expressed as "intentionally" or "with intent" are specific intent crimes. K.S.A. 2017 Supp. 21-5202(h). Burglary, as it relates to this case is, "without authority, entering into or remaining within any . . . building . . . which is not a dwelling, with intent to commit . . . theft . . . therein." K.S.A. 2017 Supp. 21-5807(a). Theft, as it relates to this case, is the act of obtaining or

exerting unauthorized control over property that has a value of less than $1,500 with the intent to permanently deprive the owner of the possession, use, or benefit of the owner's property. K.S.A. 2017 Supp. 21-5801(a)(1) and (b)(4). Thus, both burglary and theft are specific intent crimes.

Indisputably, knowingly is a lesser standard than intentionally. K.S.A. 2017 Supp. 21-5202(i) specifies that when the mental culpability requirement for a crime is "knowingly," it is a general intent crime, which is not legally appropriate here because burglary and theft are specific intent crimes. Thus, it was error to include a knowingly instruction after the specific intent crimes of burglary and theft. Next, this court must determine if the error requires reversal of one or more of Stuteville's convictions.

The circumstances of this case do not support finding that the erroneous instruction misled the jury such that this court could be firmly convinced that a different verdict would have been reached without the error. Most notably, the instructions still correctly informed the jury that to establish that Stuteville committed burglary, he had to enter the building without authority and with the *intent* to commit a theft therein. The theft instruction also correctly informed the jury that to establish theft, Stuteville, "or another for whose conduct he was criminally responsible," had to obtain unauthorized control over the copper pipes and *intend* to deprive the bank of the use or benefit of that property.

In *State v. Garrett*, No. 114,191, 2017 WL 2304450, at *3-4 (Kan. App. 2017) (unpublished opinion), *rev. denied* 306 Kan. 1323 (2017), this court compared the common lay definitions with the legal definitions of knowingly and intently and held that definitions were so intuitive that there was no need to define them in the jury instructions. See *State v. Hanks*, No. 114,640, 2016 WL 4585620, at *3 (Kan. App. 2016) (unpublished opinion). Stuteville's case is distinguishable from *Garrett* in that the jury was not provided a definition of any culpable mental state, while Stuteville's instructions

9

included a definition of an incorrect culpable state. See 2017 WL 2304450, at *3. Nevertheless, this court's analysis in *Garrett* provides support that the burglary and theft instructions were detailed enough to stand alone in prescribing what the jury had to find in order to convict. Additionally, there is nothing that suggests the jurors, in essence, ignored the meaning of the phrase "with intent" and "intended to" from the burglary and theft instructions. Instead, the jury was informed that the charges required intent and could have then used its intuitive understanding of the definition of intent to conclude that Stuteville was guilty of both offenses.

Next, the evidence provided at trial was sufficient to support the jury's verdict and does not tend to show that a different verdict would have been reached absent the knowingly instruction. Officer O'Neill testified that he saw Stuteville "in between the two fences" of the industrial complex. He also saw Stuteville running from the building carrying bags of the copper piping. Officer Smith then saw Stuteville running from the scene before arresting him. The picture evidence of the shoeprint, which was recovered from the scene, was entered into evidence as a likely match to the print of Stuteville's shoe. Additionally, the print was found in an area where Tucker told police that Stuteville had been. Moreover, Tucker was able to place Stuteville inside the industrial complex while the cutting and the bagging of the copper pipes were occurring.

Stuteville's defense at trial was in direct conflict with Tucker's testimony. He claimed that he never went inside the building and also did not know of McQueen's plan to steal the copper. Additionally, he argued that he could not have carried the bags of stolen property due to physical ailments. Defense counsel attempted to paint Tucker as a bitter ex-girlfriend who would have done anything to get Stuteville in legal trouble. Her testimony, on the other hand, was not bargained for and she had already pled guilty in her own case. Moreover, the jury was provided with an instruction which stated: "An accomplice witness is one who testifies that she was involved in the commission of the crime with which the defendant is charged. You should consider with caution the

10

testimony of an accomplice." Even with Stuteville's testimony and the instruction warning the jury to take caution in considering Tucker's testimony, the jury nonetheless found Stuteville guilty of the charged offenses.

It should be noted that the jury submitted two questions in this case. The first question asked: "[I]s the defendant criminally responsible for the individuals he gave a ride and picked up in regards to burglary Count 1?" Then the jury asked the court to define "criminally responsible or another for whose conduct he was criminally responsible." After reading the questions the trial court stated:

> "Well, the answer to the question is, please reread the aiding and abetting instruction, which answers both questions in clear and concise language. A person is criminally responsible for a crime if the person either before or during its commission and with the mental culpability required to commit the crime intentionally aids another to commit the crime. That appears to the Court to be clear. And what I propose to do is bring the jury back in and reread that instruction to them to answer those two questions. Comments?"

The State had no objections to the trial court's suggestion but defense counsel answered by stating: "[M]y suspicion is that what they're hung up on is . . . mental culpability." The trial court responded, stating: "Well, we can have our suspicions, but I can only answer the question that they ask." Defense counsel then agreed to simply reread the instructions to the jurors.

Though the jury's questions alone do not signal a clear relation to the knowingly instruction, the questions do cast doubt on what the jury understood needed to be proved to find Stuteville guilty of burglary in this case. Still, the burglary instruction correctly listed the required elements of burglary and those elements were clear and understandable. Thus, the jury's questions do not establish that the knowingly definition

11

caused the jury to find Stuteville guilty when it would have otherwise found him innocent of the charged offense.

Although the knowingly instruction was given in error, reversal of Stuteville's convictions is not required because Stuteville fails to show that the jury would have found him innocent of the charged offenses without the instruction.

*No error in failing to include an instruction defining intentional acts*

Again, the instructions given at trial for burglary and theft both correctly included an accurate and corresponding use of the word intent. The instruction provided to the jury for liability for crimes of another correctly stated:

> "A person is criminally responsible for a crime if the person, either before or during its commission, and with the mental culpability required to commit the crime *intentionally* aids another to commit the crime." (Emphasis added.)

For the first time on appeal, Stuteville argues that the trial court erred when it failed to include an instruction defining intentional acts. Stuteville argues that the instruction was required alongside the instructions for burglary, theft, and liability for crimes of another. Specifically, Stuteville argues that since his mental state was in dispute at trial, the definition of intentional acts was required in his particular case.

It is important to note that "[a] party cannot claim instructional error unless he or she either objects to the error or the error is determined to be clearly erroneous. [Citations omitted.]" *Barlett*, 2016 WL 2772842, at *6. Because the instruction was not requested below and because this court has previously held that the definition of intent is not required even when intent is a specific element of the crime, Stuteville's argument is unpersuasive. See *Garrett*, 2017 WL 2304450, at *4.

12

Again, "a district court is not required to define a legal term in the jury instructions when the common lay definition of the term does not differ from its legal definition, as we determined in *State v. Hanks*, No. 114,640, 2016 WL 4585620, at *3 (Kan. App. 2016) (unpublished opinion)." *Garrett*, 2017 WL 2304450, at *4. As decided by this court, the definition of intentional is intuitive and, therefore, does not necessarily require an instruction defining the term. 2017 WL 2304450, at *4. Additionally, in *Barlett*, this court held that it was not clearly erroneous to fail to give an instruction defining a culpable mental state where no such instruction was requested. 2016 WL 2772842, at *6-8. Moreover, as discussed earlier, there is nothing in the record to suggest that had the instructions been given, the jury would have reached a different result.

Furthermore, in making his argument, Stuteville relies on the holding in *State v. Richardson*, 290 Kan. 176, 183, 224 P.3d 553 (2010). Stuteville points to our Supreme Court's consideration of how the instructional error in *Richardson* prevented the reviewing court from knowing whether the jury found the omitted elements beyond a reasonable doubt. *Richardson*, nevertheless, is distinguishable from Stuteville's case. In *Richardson*, the defendant was charged with five moving violations and his jury was not instructed as to what constituted a moving violation. The court held that the relevant statute did not define what constituted a moving violation and did not refer to another statutory definition of the violation. "Other Kansas statutes and regulations, however, do refer to moving violations. Those provisions demonstrate that the definition of a moving violation is not intuitive." 290 Kan. at 180. Thus, the court in *Richardson* found that it was error not to include the definition and then also found that error was reversible due to the court's inability to decipher just what the jury had convicted on. 290 Kan. at 181-82. Failing to define intentional acts in Stuteville's case was not in error and, therefore, does not require reversal.

13

For the reasons stated earlier, it was not legally necessary that the trial court give the jury an instruction defining intentional acts. As a result, Stuteville's argument is unpersuasive.

*Invited error rule*

The invited error rule is commonly applied to cases similar to Stuteville's. See, e.g., *Garrett*, 2017 WL 2304450, at *3-4. If applicable, the rule would dispose of Stuteville's arguments regarding the knowingly instruction. An analysis of the invited error rule also addresses the State's second argument that Stuteville's failure to request an instruction for a culpable mental state precludes reversal on this issue. The rule, however, does not clearly apply to Stuteville's case because the jury instruction conference was held off the record and the proposed jury instructions have not been submitted to this court. The record reflects that the trial court ensured that both sides had been given a copy of the "proposed instructions," but it does not disclose whose proposed instructions those were.

"Although a defendant may challenge a jury instruction for the first time on appeal, when the defendant agrees with a jury instruction on the record, the defendant invites error and may not later challenge that instruction." *Garrett*, 2017 WL 2304450, at *3. This court decided in *Garrett* that the defendant had, in fact, invited the error of failing to request an instruction defining intent and, therefore, denied relief on his claim of error in not allowing that instruction to be used. 2017 WL 2304450, at *3-4. This case is distinguishable from *Garrett* because the record on appeal here does not include a transcript of the instruction conference. The conference took place off the record. The only thing the transcript shows is that the trial court notes that both sides submitted their own instruction, then had nothing to add, delete, or comment on before submitting them to the court. Whether the trial court used the exact proposed instructions submitted by Stuteville's defense counsel is unknown.

14

In *Hargrove*, 48 Kan. App. 2d at 553-54, this court warned that application of the rule must be used only after taking the specific facts of the case and the specific reason for the rule into consideration. This court was very specific in explaining that

> "invited error is a judge-made doctrine aimed at curtailing manipulative tactics inducing trial courts to make mistakes that otherwise might require reversal of an adverse verdict. As a judicially created rule, it should be tailored as necessary to serve its particular purpose without unnecessarily thwarting the ends of justice." 48 Kan. App. 2d at 553.

Without knowing what was asked for during the instruction conference, this court cannot be certain that the instructional defect was a result of Stuteville's lawyer's negligence or inadvertence. If there was not a tactical reason to include the knowingly instruction, "the reason for invoking the invited error rule has considerably less force." See 48 Kan. App. 2d at 554. For this reason, the invited error rule is not warranted by our record.

*Did the State Commit Prosecutorial Error During Closing Arguments?*

Stuteville argues that the State committed prosecutorial error during closing arguments when it offered a personal opinion regarding a question for the jury. Stuteville did not object to the statements at trial. A claim of prosecutorial error based on comments made during closing arguments, nonetheless, are reviewable on appeal absent a contemporaneous objection. *State v. Tahah,* 302 Kan. 783, 787, 358 P.3d 819 (2015). Our Supreme Court modified the standard that an appellate court uses in evaluating claims of prosecutorial error. See *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016). The two steps of the analysis are described as "error and prejudice" and require the appellate court to decide

"whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice. . . [this court applies] the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012)." *Sherman*, 305 Kan. at 109.

*Error*

Stuteville argues that the State committed prosecutorial error in two instances during closing arguments. First, the prosecutor stated:

"There was a footprint recovered from inside the building and you'll get to see pictures of this. Unfortunately, unlike *CSI*, there isn't a big machine where we can just scan the shoe and scan the footprint and say, yes, that's a match. Instead what we do is we give you pictures of both and we have you look at the pictures of both and we have you say whether you think that's the same footprint. And *I submit to you I've looked at the pictures. I think it's the same footprint* and I think you will think it's the same footprint." (Emphasis added.)

Then during rebuttal closing, the prosecutor told the jury:

"The shoe print is interesting, but I'm not asking you to believe that it's a match because the CSI said the pattern's consistent or the detective is. I'm asking you to look at the two pictures and decide for yourself if they're a match. It's your province. You're the jury. You get to determine that and that's why I've provided you with both pictures

16

because *I believe, having looked at them myself, I think they're a match* and I believe that when you examine the evidence, you will agree with me." (Emphasis added.)

Stuteville argues that these statements were prejudicial because there was a need to find Tucker more credible than Stuteville in order for the State to obtain a conviction against Stuteville. Specifically, the State needed to show that Stuteville was more than an unwilling participant in the acts and doing so would require that Tucker's testimony be more credible than Stuteville's. Stuteville suggests that if it was Stuteville's footprint inside of the building, that evidence would corroborate Tucker's testimony and boost her credibility.

Stuteville correctly points out that a prosecutor's personal view is irrelevant to the task before a jury and that the inclusion of these views in some circumstances may be considered error. See *State v. Charles*, 304 Kan. 158, 173, 372 P.3d 1109 (2016), *abrogated on other grounds by State v. Huey*, 306 Kan. 1005, 399 P.3d 211 (2017). "A prosecutor's repeated use of the phrase 'I think' or its equivalent or substantive opposites is discouraged as susceptible to interpretation as expression of improper and irrelevant opinion on the quantity and quality of evidence." *Charles*, 304 Kan. 158, Syl. ¶ 4. Stuteville argues that both comments included a clear expression to the jury of the prosecutor's opinion and they should be found as being outside the wide latitude afforded to a prosecutor in discussing evidence.

The State responds to Stuteville by asserting that the prosecutor was not offering an opinion as to the importance of evidence, to a final determination, or to the credibility of a witness. The State also argues that the statements do not rise to the level of unsworn testimony and also do not impermissibly place weight on the evidence. Instead, the State suggests that when read in context, the prosecutor's statement correctly told the jury that any decision made regarding the evidence is up to the discretion of the jury. The prosecutor's statements, if merely directional, as the State suggests, would not be an

17

expression of personal opinion and would therefore not have been made in error. See, e.g., *State v. Widmer*, No. 114,992, 2017 WL 1425945, at \*7-8 (Kan. App. 2017) (unpublished opinion), *rev. denied* 306 Kan. 1331 (2017).

"'[A] prosecutor has "freedom . . . to craft an argument that includes reasonable inferences based on the evidence" and "when a case turns on which version of two conflicting stories is true, [to argue] certain testimony is not believable."' . . . "A prosecutor may also argue that the evidence demonstrates a defendant's guilt. [Citations omitted.]" *Charles*, 304 Kan. at 174. In so doing, a prosecutor "must say something akin to 'the evidence shows defendant's guilt' in order to make a statement merely directional and not an expression of the prosecutor's personal opinion." *State v. Peppers,* 294 Kan. 377, 400, 276 P.3d 148 (2012).

Here, the prosecutor does not say something akin to "the evidence shows the defendant's guilt." Instead, the prosecutor's opinion spoke directly to the quality of the print evidence. The print inside the building had been testified as being a likely match to Stuteville's shoeprint but was not proven to be a definite match. The shoeprint, if a match, could put Stuteville inside the building, which only Tucker was able to testify to. Thus, in making his statements, the prosecutor likely placed impermissible weight on the evidence. The prosecutor's statements were, therefore, made in error.

*Prejudice*

If the statements were made in error, it must then be determined whether there was a reasonable possibility that the error contributed to the verdict. *Sherman*, 305 Kan. at 109. The State argues that the statements made by the prosecutor were harmless because the shoeprint was corroborated by multiple witness accounts. Moreover, the State argues that the evidence against Stuteville was overwhelming even without the shoeprint evidence.

18

In *State v. Hirsh*, 54 Kan. App. 2d 705, 722, 405 P.3d 41 (2017), this court held that although the prosecutor erred in giving an opinion as to the truthfulness of the victim's testimony, the prosecutor also informed the jury "that it was their job alone to determine the weight and credibility to be given to each witness' testimony." This court further found that the prosecutor in *Hirsh* "did not repeat or emphasize her opinion that [the victim]'s testimony was truthful. Moreover, [the victim]'s testimony was corroborated by additional witnesses who saw [her] injuries immediately after the incident." 54 Kan. App. 2d at 722.

Here, the prosecutor spoke directly to the jury and informed it that "you say whether you think that's the same footprint." Although the prosecutor did repeat his opinion in his rebuttal closing argument, it was also given with a directive to the jury to "decide for yourself if they're a match. It's your province. You're the jury. You get to determine that and that's why I've provided you with both pictures." Additionally, the jury instructions included an instruction stating: "Statements, arguments, and remarks of counsel are intended to help you in understanding the evidence and in applying the law, but they are not evidence. If any statements are made that are not supported by evidence, they should be disregarded." Moreover, even without the prosecutor's statement, the jury could have assumed the prosecutor believed that the print and the shoe matched or the evidence would not have been presented. See *State v. Corbett*, 281 Kan. 294, 316, 130 P.3d 1179 (2006) (finding that the jury could have assumed that the prosecutor believed the State had a strong case without the prosecutor's improper statement regarding the strength of the case against the defendant). Additionally, the evidence corroborating the prints' likely match and Stuteville's guilt supports the jury's verdict regardless of the opinion statement.

*Does the Cumulative Effect of the Errors at Trial Require Reversal of Stuteville's Convictions?*

Stuteville argues that if none of the errors asserted on appeal alone constitute reversible error, the cumulative effect of the errors denied him a fair trial and, therefore, require reversal. The test is whether the totality of the circumstances establish that defendant was substantially prejudiced by cumulative errors and was denied a fair trial. In assessing the cumulative effect of errors during the trial, the appellate court examines the errors in the context of the entire record, considering how the trial judge dealt with the errors as they arose (including the efficacy, or lack of efficacy, of any remedial efforts); the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014). See *State v. Walker*, 304 Kan. 441, 457-58, 372 P.3d 1147 (2016). If any of the errors being aggregated are constitutional in nature, their cumulative effect must be harmless beyond a reasonable doubt. *State v. Santos-Vega*, 299 Kan. 11, 27-28, 321 P.3d 1 (2014). No cumulative error will be found when the record fails to support the errors the defendant raises on appeal. *State v. Marshall*, 303 Kan. 438, 451, 362 P.3d 587 (2015). A single error cannot constitute cumulative error. *State v. Williams*, 299 Kan. 509, 566, 324 P.3d 1078 (2014).

The record reflects that two errors were made at trial. The first error was committed by including a knowingly instruction after the instructions for burglary and theft. The second error was committed when the prosecutor wrongly gave an opinion during closing arguments. The cumulative effect of these errors, nevertheless, do not require reversal because they did not deprive Stuteville of a fair trial and the evidence against Stuteville was strong.

Though the trial court did not attempt to remedy the errors at trial, the nature of the errors were minor and the errors were unrelated. As discussed, the jury instructions

20

still included the correct elements of what the State was required to prove beyond a reasonable doubt. Nothing in the record reflects that the inclusion of the knowingly instruction influenced the verdict in Stuteville's case. Similarly, the State's opinion statement was in regards to a tangential piece of evidence which was corroborated by multiple witness testimonies, an instruction by the prosecutor of the jury's duty to determine what weight to give the evidence, and a jury instruction notifying the jury of the same.

The strength of the evidence against Stuteville was strong enough to overcome any presumption that the jury would have reached a different verdict absent the errors that occurred at trial.

Affirmed.