NOT DESIGNATED FOR PUBLICATION

No. 118,087

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSHUA KRINHOP,
a/k/a JOSHUA GOODMAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Geary District Court; STEVEN L. HORNBAKER, judge. Opinion filed August 31, 2018. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Lloyd R. Graham*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., LEBEN, J., and BURGESS, S.J.

PER CURIAM:  Joshua Krinhop appeals his conviction of felony fleeing or eluding a police officer while committing five or more moving violations under K.S.A. 2015 Supp. 8-1568(b)(1)(E). Krinhop claims that the fleeing or eluding statute is unconstitutionally vague because it does not define "moving violation," and there's no consistent definition of "moving violation" in the Kansas statute. Under any definition in Kansas law, Krinhop's offenses—speeding, failing to signal, and running through red lights and stop signs—are "moving violations." Because the statute put Krinhop on

1

sufficient notice that his acts were prohibited, the statute is not unconstitutionally vague as applied to him.

Krinhop argues that the jury instructions were clearly erroneous because they did not define "moving violation." Krinhop also argues that the elements instruction for felony fleeing or eluding should have specified that the moving violations must occur *during* a police pursuit. The jury instructions in this case mirror the Pattern Instructions in Kansas (PIK) and accurately stated the law and informed the jury the moving violations had to occur after a police signal to stop. Krinhop is correct, however, that the district court should have instructed the jury on the lesser-included crime of misdemeanor fleeing or eluding. Notwithstanding, the error is not reversible because Krinhop has not shown that giving a lesser-included offense instruction would have made any difference in the jury's verdict.

Krinhop challenges statements made by the prosecution during opening and closing arguments. The prosecutor should not have said that Krinhop was "a danger to [the] community," or that the State would not consider Krinhop's moving violations that occurred *before* a police pursuit to "give [Krinhop] the benefit of the doubt." But the prosecutor's errors do not require reversal because there is no reasonable possibility that the errors contributed to the jury's verdict.

Last, Krinhop claims that cumulative trial error requires reversal of his conviction. The evidence that Krinhop committed felony fleeing or eluding by committing five or more moving violations during police pursuit was substantial, and there is no evidence that a different outcome would have been reached but for any errors.

2

All of Krinhop's arguments fail and the district court's ruling is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Geary County Deputy Clint Arnold was patrolling at 11:34 p.m. the evening of June 18, 2016, when he began to follow a Dodge Durango driven by Krinhop. With Deputy Arnold following, Krinhop drove at 45 miles per hour through a construction zone with a 25-mile-per-hour speed limit. Deputy Arnold switched on his lights and siren, but Krinhop did not pull over.

Deputy Arnold followed Krinhop with his siren and lights on for about eight minutes during which time Krinhop ran through stop signs and a red light (at one point almost hitting a car in the intersection), failed to signal his turns, and drove over the speed limit. Krinhop finally stopped driving once he reached the parking lot of a Motel 6 where he was staying, and Deputy Arnold ordered Krinhop out of the car and onto the ground.

Another officer found a tube with white powder, which was later identified as methamphetamine, on the ground next to Krinhop. The State charged Krinhop with felony fleeing or eluding a police officer, driving with a suspended license, possession of drug paraphernalia, and possession of methamphetamine.

At trial, Deputy Arnold testified that Krinhop committed the following moving violations between the time he signaled Krinhop to pull over and the time Krinhop parked in the Motel 6 parking lot:

- Turned without using a signal onto Bittersweet;
- Turned without a signal onto Holly;
- Turned without a signal onto Tamerisk Drive;

3

- Drove 35 miles per hour in a 30-mile-per-hour zone;

- Turned without a signal on Ash;

- Did not come to a complete stop at a stop sign;

- Drove through a red light at an intersection and nearly hit another car;

- Drove 35 to 40 miles per hour in a 30-mile-per-hour zone;

- Turned without a signal onto Sandusky;

- Drove 40 miles per hour in a 30-mile-per-hour zone;

- Turned without using a signal on Lacy Drive;

- Did not come to a complete stop at a stop sign;

- Turned without a signal into Motel 6;

- Turned without a signal into the Sapp Brothers' parking lot;

- Turned left around a parked vehicle without a signal; and

- Turned without a signal back into Motel 6.

The State played the patrol-car video for the jury, which showed the entire police chase.

To establish a violation of felony fleeing or eluding, the State was required to prove that Krinhop committed five or more moving violations during police pursuit. See K.S.A. 2015 Supp. 8-1568(b)(1)(E). The district court instructed the jury it had to find that Krinhop committed five or more of a combination of the following violations after he was signaled to stop:

- Operating a vehicle above the posted speed limit;

- Failure to stop at the marked line at a red light;

- Failure to signal before a turn; and

- Failure to stop at a stop sign.

4

The jury convicted Krinhop of fleeing or eluding while making five or more moving violations during the pursuit and driving with a suspended license but acquitted him of possession of drug paraphernalia and possession of methamphetamine. Krinhop received 12 months of probation with an underlying 12-month prison sentence.

Krinhop timely appeals his conviction for felony fleeing or eluding.

## K.S.A. 2015 SUPP. 8-1568(b)(1)(E) IS NOT UNCONSTITUTIONALLY VAGUE AS APPLIED TO KRINHOP.

The jury convicted Krinhop of felony fleeing or eluding a police officer under K.S.A. 2015 Supp. 8-1568(b)(1)(E), based in part on the State's allegation that he committed five or more moving violations during police pursuit. Krinhop argues that "moving violations" is unclear and makes the fleeing or eluding statute unconstitutionally vague as applied to him.

Krinhop failed to raise the issue before the district court. Generally, an issue not raised before the district court is waived or abandoned unless:

> "(1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the district court is right for the wrong reason. [Citations omitted.]" *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

Krinhop claims his vagueness argument is both a question of law submitted on proved or admitted facts, and this court's consideration of the issue is necessary to prevent the denial of his constitutional right to due process. Krinhop is correct on this issue permitting the consideration of his claim of vagueness despite not lodging an

5

objection at trial. See *State v. White*, 53 Kan. App. 2d 44, 55, 384 P.3d 13 (2016) (agreeing to consider vagueness challenge for first time on appeal).

Whether a statute is constitutional is a question of law subject to unlimited review. This court presumes that statutes are constitutional and resolves all doubts in favor of passing constitutional muster. If there is any reasonable way to construe a statute as constitutionally valid, this court has both the authority and duty to do so. *State v. Bollinger*, 302 Kan. 309, 318, 352 P.3d 1003 (2015).

A criminal statute is unconstitutionally vague if it fails to provide a person of ordinary intelligence fair notice of what is prohibited or if it fails to protect citizens from arbitrary enforcement of the law. *State v. McCune*, 299 Kan. 1216, 1235, 330 P.3d 1107 (2014). Courts engage in a two-step test to determine whether a criminal statute is unconstitutionally vague: "(1) whether the statute gives fair warning to those potentially subject to it, and (2) whether it adequately guards against arbitrary and unreasonable enforcement." *Bollinger*, 302 Kan. at 318.

The fleeing or eluding statute, K.S.A. 2015 Supp. 8-1568, is found in the Uniform Act Regulating Traffic; Rules of the Road, K.S.A. 8-1501 et seq. The Act Regulating Traffic sets out Kansas traffic offenses. The offense of fleeing or eluding prohibits a driver from willfully failing or refusing to bring his or her vehicle to a stop for a pursuing police officer when the driver is given a signal to do so. A first-time conviction of fleeing or eluding a police officer is a misdemeanor. It becomes a severity level 9 person felony upon the third conviction, or when the driver "commits five or more moving violations" during the police pursuit. K.S.A. 2015 Supp. 8-1568(b)(1)(E); K.S.A. 2015 Supp. 8-1568(c)(1)(C).

Krinhop says that "moving violations" in the fleeing or eluding statute is unclear. It is true that K.S.A. 2015 Supp. 8-1568 does not define "moving violation," and it does

not refer to any other statutory definition of moving violations. See *State v. Richardson*, 290 Kan. 176, 180, 224 P.3d 553 (2010); *State v. Castleberry*, 48 Kan. App. 2d 469, 481, 293 P.3d 757 (2013). At first blush, it may seem that "moving violation" is a matter of common knowledge without a need for a definition. A statute that "employs words commonly used, previously judicially defined, or hav[e] a settled meaning in law" will not be declared void for vagueness. *City of Wichita v. Hackett*, 275 Kan. 848, 853-54, 69 P.3d 621 (2003). But the definition of "moving violation" is not a matter of common knowledge and does not have a settled meaning in law. There are conflicting definitions of "moving violations." See *Richardson*, 290 Kan. at 180 ("[T]he definition of a moving violation is not intuitive.").

In the context of regulating motor carriers, the Kansas Corporation Commission defines moving violations as "the commission or omission of an act by a person operating a motor vehicle that could result in injury or property damage and that is also a violation of a statute, ordinance, or regulation of this state or any other jurisdiction." K.A.R. 82-4-1(22). In the context of regulating drivers' licenses, the Kansas Department of Revenue lists specific statutory violations that qualify as moving violations. See K.A.R. 92-52-9(a). Rather than provide an exhaustive definition, K.S.A. 2015 Supp. 8-1560c identifies certain traffic violations that are excluded from the definition of "moving violations" for the purposes of revoking or suspending a driver's license, including any speeding offense within 6 to 10 miles per hour over the speed limit.

Regardless of which definition is used, all of Krinhop's offenses—speeding, failing to stop at a red light and stop sign, and failing to signal a turn—were "moving violations." See K.A.R. 92-52-9(I) (failure to stop at a red light); K.A.R. 92-52-9(K) (failure to stop at a stop sign); K.A.R. 92-52-9(P) (failure to signal before a turn); K.A.R. 92-52-9(Q) (speeding); K.A.R. 82-4-1(t). There was no risk of confusion to Krinhop despite conflicting definitions and no need to provide any additional definition of "moving violation." Although the definition of "moving violations" may not be a matter

7

of common knowledge, the statute provided sufficient notice to Krinhop that speeding, failing to stop at a red light and stop sign, and failing to signal a turn were prohibited once Deputy Arnold signaled for him to stop. Thus, K.S.A. 2015 Supp. 8-1568 is not unconstitutionally vague as applied to Krinhop.

## THE DISTRICT COURT'S JURY INSTRUCTION FOR FELONY FLEEING OR ELUDING WAS NOT CLEARLY ERRONEOUS.

Krinhop challenges the district court's jury instructions on his felony fleeing or eluding charge. He argues that the district court erred by:  not including a definition of "moving violation" for the jury; not instructing the jury on an element of the crime; and failing to instruct on the lesser-included offense of misdemeanor fleeing and eluding.

Krinhop did not challenge the jury instructions at trial and did not request instructions on the definition of "moving violation" or a lesser-included offense instruction. When the party challenging a jury instruction on appeal failed to raise the issue before the district court, the clearly erroneous standard of review applies. This standard is a two-step review that requires this court to first determine whether the proposed instructions were legally and factually appropriate, employing an unlimited review of the entire record. If the district court erred by not including the instruction, the defendant must then firmly convince the court that the jury would have reached a different result without the error. *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012).

Krinhop argues the district court should have defined "moving violation" for the jury. The issue of defining "moving violation" for the jury in this case is effectively moot. The district court's failure to give a definition had no effect on the jury's verdict. As discussed above, each of Krinhop's offenses were "moving violations" under any definition in Kansas law. See *Castleberry*, 48 Kan. App. 2d at 482 (finding that failure to

8

list elements of each moving violation did not affect jury verdict because under any definition in Kansas law, each offense was a "moving violation"). Furthermore, Krinhop makes no argument that including a definition would have somehow changed the jury's verdict against him.

Krinhop also claims the district court's jury instruction, which mirrored the PIK for felony fleeing or eluding, was deficient because it did not clarify that Krinhop had to commit five or more moving violations *during* police pursuit. In accordance with the PIK, the district court instructed the jury that it had to find that:

"1.  The defendant was driving a motor vehicle.

"2.  The defendant was given a visual or audible signal by a police officer to bring the motor vehicle to a stop.

"3.  The defendant willfully failed or refused to bring the motor vehicle to a stop for, or otherwise fled or attempted to elude, a pursuing police vehicle[.]

"4.  The police officer's vehicle, from which the signal to stop was given, was appropriately marked showing it to be an official police vehicle.

"5.  The defendant committed five or more moving violations.

"6.  The act occurred on June 19, 2016 . . . .

"The State must prove that the defendant committed the crime intentionally. . . ."

The Kansas Supreme Court "strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to [jury] instructions." *State v. Barber*, 302 Kan. 367, 377-78, 353 P.3d 1108 (2015). The instructions here accurately stated the law and informed the jury that the moving violations had to occur after a police signal to stop. See *State v. Dupree*, 304 Kan. 377, 394, 373 P.3d 811 (2016) (applying rule that appellate courts read jury instructions as a whole in order to determine whether they properly and fairly state the applicable law or whether they could have misled the jury). When read sequentially, the instructions tell the

9

jury it must first find that the officer signaled Krinhop to stop, and that thereafter Krinhop committed five or more moving violations.

To ensure the jury found that he committed the moving violations during the police pursuit, Krinhop also argues the district court should have given a limiting instruction telling the jury it could not consider any moving violations he may have committed before the police pursuit. Since the instructions given accurately state the jury was to consider moving violations that occurred after the police pursuit began, there is really no need to give the instructions Krinhop claims were necessary. Even if one were to assume it was error for the district court not to give a limiting instruction, it was not reversible error. Krinhop has not shown that giving a limiting instruction would have made any difference in the jury's verdict. Instead, evidence from Deputy Arnold's testimony and the patrol-car video strongly supports a finding that Krinhop committed five or more violations during the police pursuit. (In actuality it was 16 in total.) See *State v. Molina*, 299 Kan. 651, 661, 325 P.3d 1142 (2014) (holding that failure to give limiting instruction not clearly erroneous because the jury heard substantial evidence of defendant's guilt).

Finally, Krinhop argues the district court should have given a lesser-included offense instruction for misdemeanor fleeing and eluding. A lesser-included-offense instruction is legally appropriate when the lesser crime is an included offense of the crime charged and is factually appropriate when some evidence would reasonably justify convicting the defendant of the lesser-included crime. K.S.A. 2015 Supp. 22-3414(3); *State v. Armstrong*, 299 Kan. 405, 432, 324 P.3d 1052 (2014). Here, misdemeanor fleeing or eluding is an included offense of felony fleeing or eluding because all the elements of misdemeanor offense are also elements of the felony offense. Compare K.S.A. 2015 Supp. 8-1568(a) with K.S.A. 2015 Supp. 8-1568(b)(1)(E); K.S.A. 2017 Supp. 21-5109(b) (defining lesser offense). Thus, the lesser-included-offense instruction was legally appropriate. The lesser-included-offense instruction was factually appropriate because the

10

evidence presented at trial could support a conviction of misdemeanor fleeing or eluding. See *State v. Breeden*, 297 Kan. 567, 573, 304 P.3d 660 (2013).

Because the misdemeanor fleeing or eluding instruction was legally and factually supported, it was error for the district court not to give it. See K.S.A. 2015 Supp. 22-3414(3) (providing that court *must* give instruction on lesser included crime when some evidence would reasonably justify conviction). Even so, the error was not clearly erroneous. Krinhop bears the burden of firmly convincing this court that the jury would have convicted him of misdemeanor fleeing or eluding rather than felony fleeing or eluding had the district court given the instruction. *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012). The evidence that Krinhop committed five or more moving violations during the police pursuit was substantial. Deputy Arnold testified that Krinhop committed 16 specific violations during police pursuit, and the jury watched the patrol-car video which supported the deputy's testimony. Krinhop has not shown that giving a misdemeanor fleeing or eluding instruction would have made any difference in the jury's verdict.

DID THE PROSECUTOR COMMIT PROSECUTORIAL ERROR?

Krinhop claims the prosecution committed three errors during opening and closing arguments warranting reversal of his convictions: making comments appealing to community interests; misstating the law; and giving a personal opinion on Krinhop's guilt.

Krinhop did not object to the prosecutor's statements during opening and closing arguments. Generally, a defendant must timely object to evidence at trial to preserve the issue for appeal. K.S.A. 60-404; *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009). This court will review a prosecutor's comments made during opening and closing

11

statements for prosecutorial error even without timely objection. *State v. Sean*, 306 Kan. 963, 974, 399 P.3d 168 (2017).

When a defendant claims he or she has been deprived of the right to a fair trial by some act of the prosecutor, this court must engage in a two-step inquiry. *State v. Butler*, 307 Kan. 831, Syl. ¶ 5, 416 P.3d 116 (2018); *State v. Sherman*, 305 Kan. 88, Syl. ¶ 6, 378 P.3d 1060 (2016). First, this court must decide if the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to present the State's case and obtain a conviction in a way that does not offend the defendant's constitutional right to a fair trial. If it determined that such an act did occur, this court must next determine whether the error prejudiced the defendant's due-process rights to a fair trial. If such an error did occur the State may argue harmless error by establishing there is no reasonable possibility that the error contributed to the verdict. 305 Kan. at 109.

Krinhop first claims that the prosecutor improperly appealed to community interests and inflamed the passions of the jury with these comments:

> "And we pick citizens of Geary County. I live here. You're citizens here. Like, when he went across that intersection, going across 77, through a red light, cars were swerving and stuff? That's dangerous. I don't care if he was only going 30 or 35 miles an hour at that time. . . . He failed to yield right-of-way. . . .
>
> . . . .
>
> ". . . I don't care how fast or slow he was going, he committed over five violations, he was a danger to our community."

Prosecutors enjoy wide latitude in conducting the State's case and seeking to obtain a conviction. *Butler*, 307 Kan. 831, Syl. ¶ 5. The prosecutor may make reasonable inferences based on the evidence but may not argue facts not in evidence, make statements that inflame the passions or prejudices of the jury, or distract the jury from its

duty to make decisions based on the evidence and the controlling law. *State v. Killings*, 301 Kan. 214, Syl. ¶ 5, 340 P.3d 1186 (2015).

Here, the prosecutor's comment that Krinhop's speeding was dangerous was a permissible inference drawn from the evidence and within the wide latitude afforded a prosecutor. See 301 Kan. 214, Syl. ¶ 5. The statement that Krinhop was "a danger to [the] community" went too far. Making comments that inferentially ask the jury to render a verdict to protect the community are improper. *Bullock v. BNSF Ry. Co.*, 306 Kan. 916, 943-44, 399 P.3d 148 (2017); *State v. Finley*, 273 Kan. 237, 245, 42 P.3d 723 (2002). The State concedes this point.

Notwithstanding, the comment that Krinhop was "a danger to [the] community" did not prejudice his right to a fair trial. There's no indication that the jury rendered its verdict based on the prosecutor's statement rather than on the evidence. The jury asked to view the patrol-car video of the pursuit during deliberations, indicating that it considered the evidence closely and based its verdict on that evidence. Also, when the comment is considered in light of the entire record and the strong evidence of guilt, there is no reasonable possibility that the error contributed to the verdict. The error is not reversible error.

Next, Krinhop suggests that the prosecutor misstated the law during closing argument. When discussing Krinhop's moving violations, the prosecutor stated:

> "I'm going to step over here for just a moment. And these are my notes. This is not evidence. . . . Now, what I have here is, I had a speeding in a construction zone twice, no turn signal, a red light. Now, these were before the lights and siren were turned on. So what I'm going to do, to give him the benefit of the doubt, I'm going to cross these off. These happened before the red lights and sirens came on. Okay? So I'm taking those away."

13

In every criminal case, the burden is on the State to prove every element of the charged crime beyond a reasonable doubt. *Miller v. State*, 298 Kan. 921, Syl. ¶ 5, 318 P.3d 155 (2014). An element of felony fleeing or eluding is that the defendant commit five or more moving violations during a police pursuit. K.S.A. 2015 Supp. 8-1568(b)(1)(E). As Krinhop argues, the jury *could not* count moving violations from before the police pursuit against him. Instead, the State had the burden of proving five or more moving violations during the police pursuit beyond a reasonable doubt. Thus, it was inaccurate to say that setting aside prepursuit violations was only to "give [Krinhop] the benefit of the doubt."

A prosecutor commits prosecutorial error if he or she misstates the law. See *State v. McBride*, 307 Kan. 60, 65-66, 405 P.3d 1196 (2017) (finding that prosecutor committed error by misstating the defendant's presumption of innocence); *State v. Pribble*, 304 Kan. 824, 833, 375 P.3d 966 (2016). A prosecutor also commits error by making arguments that dilute the State's burden of proof. *State v. Thomas*, 307 Kan. 733, 743, 415 P.3d 430 (2018). The prosecutor's statement here was made in error because it distracted the jury from the State's burden to prove that Krinhop committed five or more moving violations during the police pursuit.

At this point in the analysis, the State has the burden to prove beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record. *Sherman*, 305 Kan. 88, Syl. ¶ 8. As the State points out, the district court properly instructed the jury to find, beyond a reasonable doubt, that Krinhop committed five or more of a combination the following violations after he was signaled to stop:

- Operating a vehicle above the posted speed limit;
- Failure to stop at the marked line at a red light;
- Failure to signal before a turn; and
- Failure to stop at a stop sign.

14

The jury was also instructed that it should consider only the evidence and exhibits admitted into evidence, and that statements of counsel were not evidence. Also, the State reminded the jury that it had to find Krinhop guilty beyond a reasonable doubt. Finally, the evidence that Krinhop committed the instructed offenses during the police pursuit was overwhelming. See *Sherman*, 305 Kan. at 111 ("The focus of the inquiry is on the impact of the error on the verdict. While the strength of the evidence against the defendant may secondarily impact this analysis one way or the other, it must not become the primary focus of the inquiry."). There is no indication the jury considered prepursuit violations when rendering its verdict or that it was confused as to the State's burden. The State has met its burden to show there is no reasonable possibility that the prosecutor's error contributed to the jury's verdict.

Last, Krinhop claims that the prosecutor committed error in opening argument by stating, "At the end, I'm going to ask you to find him guilty as charged. Naturally, if the State did not believe they could prove it, we wouldn't be here." Krinhop argues that the prosecutor's statement conveyed a personal belief that Krinhop was guilty. A prosecutor's personal view is irrelevant to the task before a jury, and the inclusion of these views may be considered error in some circumstances. See *State v. Charles*, 304 Kan. 158, 173, 372 P.3d 1109 (2016), *abrogated on other grounds by State v. Huey*, 306 Kan. 1005, 399 P.3d 211 (2017). But the prosecutor did not say *he* believed Krinhop was guilty—he said that the State thought it could be successful at trial. See *Charles*, 304 Kan. at 174 (recognizing that prosecutor's phrase "I think" susceptible to misconduct challenge). It is fairly intuitive that the State would not pursue a case that it thought it would lose. The comment did not fall outside the wide range of permissible statements and did not constitute prosecutorial error.

15

DID CUMULATIVE ERROR DEPRIVE KRINHOP OF A FAIR TRIAL?

Finally, Krinhop suggests that, even if individual assigned errors were not so egregious as to warrant reversal, when viewed collectively they denied him his right to a fair trial.

The test for reversible cumulative error is "'whether the totality of circumstances substantially prejudiced the defendant and denied the defendant a fair trial. No prejudicial error may be found under this cumulative effect rule, however, if the evidence is overwhelming against the defendant.' [Citations omitted.]" *State v. Williams*, 299 Kan. 1039, 1050, 329 P.3d 420 (2014). Despite any errors, Krinhop was not substantially prejudiced or denied a fair trial. The evidence that Krinhop committed five or more moving violations during the police pursuit was substantial. Deputy Arnold testified that Krinhop committed 16 violations: 10 failing to signal, 3 speeding, 2 running through stop signs, and 1 running through a red light. The jury watched the patrol-car video supporting Deputy Arnold's testimony. The video showed Krinhop ran through a red light (almost hitting a car in the intersection), sped through residential neighborhoods, failed to signal before turning, and ran through two stop signs. There was no cumulative error at trial.

Affirmed.

16